37157.   W. B. LEEDY & COMPANY *v.* SHIRLEY.

ECIDED JULY 3, 1958.

*Crenshaw, Hansell, Ware & Brandon, R. W. Crenshaw, Jr.,* for plaintiff in error.

*John L. Westmoreland, John L. Westmoreland, Jr., Claude R. Ross,* contra.

QUILLIAN, Judge. 1. Neither count 1 nor count 2 states a cause of action. The basis of these actions, whether for breach of contract or for money had and received, even assuming the latter would lie when recovery for a breach of the written contract would fully compensate the plaintiff, is a commitment to purchase group loans. This contract is as follows:

"W. B. Leedy & Company, Inc.
Birmingham, Alabama
Commitment to Purchase Group Loans.

February 24, 1956.

Cheek & Troutman, Builders.
160 Westminster Drive.
Atlanta, Georgia.

FHS No.
VA No. CA-89090.

"You are advised that we have approved for purchase loans submitted by you to us to be insured by the Federal Housing Administration or guaranteed by the Veterans Administration in keeping with its existing regulations or amendments thereto, to be executed by you or approved owner occupants, securing the aggregate principal amount of three hundred ninety-seven thousand dollars three hundred fifty dollars if closed in the names of owner occupants approved by this company. Loans to bear interest at the rate of 4½% payable as to principal and interest in equal monthly instalments for terms not to exceed 25 years plus monthly deposits for taxes, hazard insurance and mortgage insurance as estimated by us. If prior to disbursement the allowable rate of interest is increased by the F.H.A. and Veterans Administration or either, then any loans not closed as of that date are to be disbursed by us at the increased interest rate.

"Loans in keeping with the following schedule are to be secured by valid first liens upon real estate situated in the State of Georgia County of DeKalb:

"See CRV attached for sales prices.

"(Rubber stamp). Dept.: Improvement. O.K. by WOJ. Page ent. 3-27-56. Date Paid 3-27-56. Check No. 118. $3,973.50.

"Our approval of these loans is subject to your compliance with the following:

"1. Furnish unqualified final FHA or VA compliance inspection report.

"2. The security instrument shall be a first lien on the fee-simple title satisfactory to us. We shall be furnished, without expense to us, with a title policy on a form and by an insurer approved by us, with a complete survey showing the lot lines and location of all buildings. Title, survey and all papers must be approved by us before the loan proceeds are disbursed.

"3. At the time the loans are closed, we shall be furnished with fire insurance, and such other kinds of insurance, in such companies, forms and amounts as we require. The policies with mortgage clauses attached are to be delivered to and held by us.

"4. All taxes and assessments to be paid in full prior to or at the time the loans are closed.

"5. At the time each loan is closed there shall be deposited

with us an amount which we estimate to be sufficient to cover the accrued taxes, both general or special, the expired portion of the hazard insurance premium and F.H.A. mortgage insurance premium when loan is to be insured by the F.H.A.

"6. Satisfactory appraisals by approved and designated appraiser of Veterans Administration or F.H.A. to be furnished.

"7. Subject to all requirements and regulations of the Veterans Administration and F.H.A. whichever applicable, or both.

"8. You are to deposit with us upon your acceptance hereof a sum equal to 1% of the total amount of the loan, or $3,973.50. As each loan is closed to an owner occupant you will be refunded an amount equal to 1% of the amount approved by the F.H.A. as builders loan. In the event any loan or loans included in the schedule herein are not for any reason closed to an owner occupant, the 1% deposited in connection therewith is forfeited to us and you relinquish all claim thereto.

"9. Improvements to be completed in accordance with plans and specifications heretofore approved by the F.H.A. or V.A. Compliance with all subdivision requirements as set by the F.H.A. or V.A.

"10. Loan to be closed by attorney or title company designated or approved by us.

"11. Other requirements:

"A. Loans to be closed on basis of 97 with the builder paying the discount.

"B. Each borrower is to pay W. B. Leedy & Company, Inc., 1% origination fee.

"C. In no event is the loan to exceed 98% of the sales price with the borrower to pay closing costs in addition to the 2% down payment.

"D. Subject to approval of credit of borrower by W. B. Leedy & Company, Inc.

"E. We are to be furnished with photographs of the completed improvements before closing the loans.

"12. This approval will expire automatically March 10, 1956, without notice to you and without liability to this company if we have not been notified that it has been accepted. After acceptance this commitment may be canceled at our option with-

out notice to you and without liability to this company, if all loans have not been disbursed by November 1, 1956.

W. B. Leedy & Company, Inc.

Date
Accepted:

By /s/ George L. Bailes, Jr.

/s/ W. D. Shirley     George L. Bailes, Jr., Vice President.
    Applicant
/s/ Marjorie C. Thurman
        Notary
Notary Seal"

As to the first count: It alleges no breach of the contract by the plaintiff in error. Paragraphs 10 and 11 of count one allege:

"During August and September, 1956, plaintiff offered applications for loans pursuant to said commitment for Thomas Randolph Adderholt and Marvin Thomas Griffin and submitted to defendant in connection with such applications credit reports on said applicants. Notwithstanding said applicants were good credit risks, defendant arbitrarily refused and declined to procure loans pursuant to the terms of said commitment, and announced to plaintiff that defendant was not going to accept any more loan commitments at all for plaintiff pursuant to said commitment."

The contract provided for twelve conditions precedent to the acceptance of loans submitted to plaintiff in error. Paragraph 11 alleges only that the applicants were good credit risks. It is too obvious to warrant discussion that this allegation does not allege a breach of the contract. Paragraph 11 alleges that the plaintiff in error announced to the defendant in error that it was not going to accept any more loan commitments as an anticipatory breach of the contract. This might be a sufficient allegation if alone and unqualified by the remainder of count 1, but paragraphs 7, 8 and 9 of count 1 each allege acceptance by the plaintiff in error of commitments subsequently to August and September 1956, the times at which the alleged anticipatory breach occurred. These allegations show that if there had been an anticipatory breach the parties had waived and ignored it and had returned to the mutual performance of the contract, and the last of them was even after the commitment contract had expired under its express terms.

As to count 2: Count 2 is based on the theory that the contract was null and void from its acceptance by the defendant in error and was not binding on either party because the offered contract provided that if it was not accepted by the defendant in error by March 10, 1956, the offer would expire automatically. Notwithstanding this provision the defendant in error accepted the contract in writing on March 27, 1956, paid the plaintiff in error $3,973.50, which it accepted, and both parties operated under the contract until November 19, 1956, 18 days after the expiration date of November 1, 1956. Under these circumstances when the plaintiff in error accepted the money on March 27, 1956, and both parties operated under the contract as aforesaid the defendant in error is estopped to say that the contract was not valid and binding for the reason that the acceptance after March 10th was a counter-offer which was accepted by the plaintiff in error. If such acceptance was not a counter-offer, the plaintiff in error is deemed to have waived by its acceptance the deadline for acceptance of the offer which it put in the offer for its own benefit. Furthermore such a provision in an offer is not a part of the completed contract at all and if with such a provision in an offer the offeror can still accept the acceptance of the offer. If A writes B a letter and offers to hire him for one month for $500 salary and provides in the letter that the offer expired on the last day of the month in which the letter was written, if B, two months after the last day for acceptance, accepts the offer in writing on the very letter containing the offer and begins work for A, it would be unthinkable to conclude that there was no binding contract between the parties. The second count is also otherwise defective in the same respects as the first count. See *Estes Lumber Co.* v. *Palmyra Yellow Pine Co.*, 29 *Ga. App.* 15 (113 S. E. 821); *Citizens Bank of Tifton* v. *Willis*, 15 *Ga. App.* 772 (84 S. E. 157).

An acceptance of an offer after the time limited is binding on the offeror if he assents to the acceptance after it is made. 12 Am. Jur. 548, Contracts, § 57 and citations under note 1, Restatement of the Law, Contracts, Vol. 1, p. 79, § 73.

2. Special demurrer 2 attacked paragraph 6 of count 1 of the petition which provides: "The terms and provisions of said com-

mitment provided that defendant would repay to plaintiff an amount equivalent to 1% of the loan on each sale that was made by plaintiff and for which a loan was provided by defendant, thus giving plaintiff an opportunity to recoup the $3,973.50 paid by defendant to plaintiff as aforesaid."

The demurrer should have been sustained because the paragraph alleges that the contract provides that the plaintiff is to receive an amount equivalent to 1% of each loan procured by the plaintiff. This is in conflict with the contract which provides that the plaintiff is entitled to 1% of the amount approved by F.H.A. as builders loan.

3. Special demurrer 3 reads as follows: "Defendant demurs to paragraph 12 of count 1 of the petition as amended and in particular to the allegation that the defendant's actions 'were done for the reason and purpose and with the effect of denying plaintiff any further loans pursuant to said commitment to place elsewhere and at the same time retain the money which plaintiff had paid defendant for said commitment' upon the ground that said allegation is a conclusion of the pleader without any pleaded facts in said paragraph or elsewhere in the petition to support said conclusion."

The trial judge erred in overruling this special demurrer.

4. Special demurrers 10, 11, and 12 to the second count of the petition are that the loan contract referred to in that count was not attached as an exhibit, and the count did not disclose whether it was a verbal or a written contract. From the allegations of the count it clearly appears that the contract was in writing. The contract did not constitute the cause of action or the basis upon which relief was prayed. Code § 81-105. These demurrers were properly overruled.

The remaining special demurrers filed by the defendant are without merit.

*Judgment reversed. Felton, C. J., and Nichols, J., concur.*