75696. PANFEL et al. v. BOYD et al.
(371 SE2d 222)

BIRDSONG, Chief Judge.

The original appeal of this case was from the order of the trial court, granting and denying various motions for summary judgment by appellants and appellees. This court issued its holding on February 12, 1988, affirming in part and reversing in part, the judgment of the trial court. Motions for rehearing by appellants and appellees were denied. Certiorari was denied by the Supreme Court, but the "Georgia Real Estate Commission filed an extraordinary motion [with the Supreme Court] . . . inviting attention to Reg. 520-1.34 (2) (g) of the Rules and Regulations of the Georgia Real Estate Commission." The Supreme Court then remanded this action to this court for appropriate consideration. We vacate our opinion of February 12, 1988, and substitute the following in lieu thereof.

Appellants, Mark Panfel and Scott Roberts, were potential purchasers of the Anderson Park Apartments, which were owned by appellees James Boyd, Boyd Properties, and Anderson Park Apartments, Ltd. Appellees contracted with Michael Callahan, a real estate agent, and Northside Realty Associates, his employer, to sell the apartment complex. Roberts saw the advertisement and made an inquiry which led to the tender of a contract by Panfel and Roberts who were jointly involved in other real estate ventures. The first contract was refused, but Boyd and his partners made suggestions which were accepted by Panfel and Roberts and a second contract was tendered. Appellants' second contract offered a purchase price of $1,490,000, contingent upon the buyers obtaining a new first mortgage "of not less than $1,140,000, with an interest rate not to excede [sic] 13%." Sellers were to receive $400,000 at closing and carry a second lien security deed in the approximate amount of $406,265 at 11% for 4 years and 12% for the remainder of the period. The buyers were to deposit $10,000 "to be used as earnest money, to be applied as part payment of the purchase price . . . and *if sale, due to Buyer's default, willful or otherwise, is not consummated, then said earnest money shall be refunded*." (Emphasis supplied.) The sales contract

was drafted by Panfel and Roberts on May 14, 1985, and required that the "[s]ale shall be closed on or before July 1, 1985." The contract was accepted by Boyd and his partners and appellants' check for $10,000 was deposited by Northside into its escrow account.

Panfel testified that the property appraisers were behind schedule and it became apparent that appellants could not complete arrangements for their loan before the July 1 closing date. Appellants verbally requested Callahan to obtain an extension of time for closing and confirmed the request with a letter, dated June 27, 1985, in which they cite their "due diligence in attempting to close title by July 1st and would appreciate you[r] efforts in procuring a reasonable extension." Callahan gave the letter to Boyd, who polled his partners and reached an agreement to extend closing to July 19 because appellants' letter stated they "should be able to close the loan by *mid-month*." (Emphasis supplied.) Callahan said he verbally advised Panfel and Roberts of the July 19 deadline, but that the sale did not close on that date. Panfel stated that he talked to Callahan almost on a daily basis and "we understood that we had obtained our requested extension. There was no writing confirming the extension." Appellants denied they were informed of a definite date for closing in response to their request, only that they had obtained an extension.

Callahan said that at some time before July 26, Panfel told him that the appellants had received a mortgage commitment from their bank for $1,100,000, which was $40,000 short of the contract condition, and appellants "asked [him] to ask Mr. Boyd whether the partnership would be willing to increase the amount of the loan the partnership intended [to] make to the purchasers as a part of the sale. [He] passed that request along to Mr. Boyd, and he rejected it."

Panfel's affidavit shows that the appellants received their loan commitment on July 26, one week after the extended closing date, and that he called Callahan on that date telling him of the loan and Callahan asked him when closing would be. Following that statement, Panfel said: "In a prior conversation, Mr. Callahan was asked by Mr. Roberts to approach the seller regarding the potential of including an additional $40,000 in the secondary financing. . . . At all times Mr. Roberts and I had the additional $40,000 at our disposal and, from July 26, 1985 on, were ready, willing and able to close the sale. . . ." Callahan informed Panfel that Boyd was considering appellants' request for additional financing of $40,000 as a counter offer.

Callahan admitted receiving a letter from Panfel on July 30 stating appellants would be ready to close on July 31, but on July 30, he had told Roberts and Panfel the seller would not close on July 31, but he would poll his partners regarding an extension to August 2, and "that Mr. Boyd was not inclined to extend the closing deadline." Appellants admitted they were told Boyd was not inclined to extend the

deadline but Callahan asked them to put their proposal in writing "and that closing would be extended until August 2, 1985." Panfel placed appellants' proposal in a letter and gave it to Callahan. The letter was delivered to Boyd. On August 2, 1985, Boyd had a letter hand-delivered to appellants rescinding the contract for failure of the purchasers to close "on or before the time set forth in the contract, as extended. . . ."

At some time after August 2, Panfel asked Callahan for a return of the $10,000 earnest money and confirmed his request in writing by a letter dated August 6, 1985, demanding return of the money. Callahan forwarded the letter to Boyd with an additional line typed thereon which included the consent of Boyd to return the earnest money. Subsequently, Boyd informed Callahan he would consent to a return of the earnest money and would reimburse appellants for their expenses in return for appellants' agreement "not to sue him or his partners." Callahan confirmed this verbal offer in a letter to Boyd and sent a copy to Panfel. Appellants rejected the offer and Panfel responded with a letter, dated September 4, to Callahan again demanding return of the earnest money under the terms of the contract. In the interim, appellants forwarded a letter to the head of Northside's escrow accounts demanding return of the money in accordance with the contract, within three days, or that a lawsuit would be filed for the money and damages.

The earnest money was not returned and this action followed alleging: (1) breach of the sales contract, (2) a request for specific performance, (3) negligence on the part of Callahan for "failing to obtain an extended closing date from seller . . . [and] in not obtaining a written extension for this closing date," (4) that Callahan wilfully, wantonly and intentionally represented that the sale would be closed on a date certain with actual or implied knowledge that the sellers intended not to perform, which amounted to fraud, and (5) that Callahan and Northside wrongfully refused to return the earnest money in accordance with the terms of the contract and wrongfully conspired to withhold the money.

Northside answered and filed a counterclaim against Panfel and Roberts, and a cross-claim against Anderson Park Apartments, alleging that because appellants demanded specific performance and the "[s]eller has not authorized the release of the . . . earnest money," Northside was interpleading the funds into the registry of the court because it was "in great doubt as to whether defendants-in-counterclaim [Panfel and Roberts] or defendant-in-cross-claim [Anderson Park Apartments] is entitled to said funds."

Boyd, Boyd Properties and Anderson Park Apartments answered and filed a counterclaim to recover fees, expenses and damages incurred when its attempt to refinance the apartment complex was

turned down by the bank, ostensibly because of a lis pendens filed by appellants. A consent order was entered directing the interpleaded funds to be returned to appellants. The trial court granted summary judgment to Northside Realty, Callahan, Boyd, Boyd Associates, and Anderson Park Apartments on their motions. The court denied appellants' motion for summary judgment against Boyd, Boyd Associates and Anderson Park Apartments on appellees' claims for damages based on the lis pendens filing. Panfel and Roberts appeal from this order. *Held*:

1. Appellants allege error of the trial court "in failing to support its [summary judgment] Order with findings of fact and conclusions of law. . . ." Our Code requires in actions "tried upon the facts without a jury . . . [that] the court shall find the facts specially and shall state separately its conclusions of law thereon. . . . [However,] [f]indings of fact and conclusions of law are unnecessary on . . . motions under Code Section . . . 9-11-56 [summary judgment] . . . except as provided in subsection (b) of Code Section 9-11-41." OCGA § 9-11-52 (a). OCGA § 9-11-41 (b) deals with involuntary dismissal of a complaint for failure of the plaintiff to prosecute or comply with an order of the court and is inapplicable to this case. The court did not err in failing to make findings of fact and conclusions of law.

2. It is contended that the court erred in granting summary judgment to Callahan and Northside because there remain questions of fact regarding: (a) Callahan's breach of legal duties to appellants, (b) Callahan's promises and representations to appellants which would support their claim of fraud, and (c) the withholding of the earnest money.

(a) Appellants were experienced real estate investors, and knew Callahan was an agent for the seller, and they had dealt with him in that capacity from the beginning of the negotiations until the final letter of rescission. All terms of the contract had been determined by Boyd and appellants, Panfel and Roberts. All requests for modification of the contract had been transmitted through Callahan to the seller. It was clearly understood by all parties that Boyd gave approval for any contract modification. Appellants twice submitted requests in writing, through Callahan, to Boyd, for extensions of the closing date, acknowledging that Callahan was without authority to decide any issue and only the seller could make a binding decision. There was no "apparent authority" that Callahan was anything other than an agent of the seller, or that his authority extended to varying the terms of the contract. See *Interstate Fin. Corp. v. Appel*, 134 Ga. App. 407 (1) (215 SE2d 19). Appellants demonstrated, in writing, they were fully aware of the extent of authority of Callahan, i.e., to transmit offers and other communications to the seller. We find no basis in the record for a claim of a legal duty of Callahan to the appellants, or

for a claim of fraud. See *Washington v. Combustion Engineering*, 159 Ga. App. 555, 557 (284 SE2d 61).

(b) Remaining at issue is whether the court erred in granting summary judgment to Callahan and Northside on the issue of damages in refusing to return appellants' earnest money. The contract terms were clear and unambiguous: "if sale, due to Buyer's default, willful or otherwise, is not consummated, then said earnest money shall be refunded." On August 2, the seller directed a letter to the buyers formally rescinding the expired contract. Appellants verbally, then in writing, demanded return of the earnest money. Callahan, and Northside as his principal, chose to ignore the contract terms and forwarded the letter to the seller for his concurrence in the return of the money. The seller also disregarded the contract terms and elected to exact exculpation. Continued demands for adherence to the contract terms for return of the earnest money met with negative results, until this action was filed and Northside impleaded the earnest money into the registry of the court, where all parties consented to its return to appellants.

On appeal Callahan and Northside allege adherence to the Rules of the Georgia Real Estate Commission as a basis for their failure to return appellants' earnest money. The Georgia Real Estate Commission is authorized to pass rules and regulations, "not inconsistent with this chapter" (OCGA § 43-40-2 (c)) in governing the conduct of real estate brokers and salespersons. Section 520-1-.34 (2) of those Regulations provides that a broker "who disburses trust funds from a designated trust account under the following circumstances shall be deemed by the Commission to have fulfilled properly the broker's duty to account for and remit money which the broker is required to maintain and deposit in a designated trust account. . . ." The regulation then lists seven methods: (a) upon "rejection of an offer to buy, sell, rent, lease, exchange or option real estate"; (b) upon withdrawal of an offer, not accepted, (c) at the closing of the transaction, (d) upon securing a written agreement signed by all parties, which directs the brokers' action, (e) upon the filing of an interpleader, (f) in compliance with the order of a court of competent jurisdiction, and (g) "upon a reasonable interpretation of the contract which directed the broker to deposit the funds."

Where an agency or commission is granted the authority and power to adopt such rules and regulations within the scope of the legislative enactment, such rules and regulations have the same force and effect as that of a statute. *Georgia Public Svc. Comm. v. Jones Transp.*, 213 Ga. 514, 515 (100 SE2d 183). However, it is the paramount public policy of this state that courts will not lightly interfere with the freedom of our citizens to contract. *Cash v. Street & Trail*, 136 Ga. App. 462, 465 (221 SE2d 640). Thus, "a person may waive or

renounce what the law has established in his favor when he does not thereby injure others or affect the public interest." OCGA § 1-3-7. Hence, in the instant case all parties to the contract chose to contract for the return of the earnest money to the potential buyer "if sale, due to Buyer's default, willful or otherwise, is not consummated. . . ." We find nothing injurious to other persons or contrary to the public interest in such provision. It is uncontested that the sale was not consummated, due to the buyer's default, but Northside failed to return the earnest money, even after the repeated demands of appellants. We also note that the Commission's regulations authorized a return of the earnest money upon "rejection of an offer to buy . . ." and "upon a reasonable interpretation of the contract. . . ." The seller clearly rejected appellant's offer to buy and a "reasonable interpretation of the contract" terms required a return of the earnest money, but Northside chose not to comply with these subsections, but elected to pursue an agreement between the parties which was not obtained. Then Northside elected to implead the funds into this action.

" 'Before one occupying the situation of a stakeholder can call upon adverse claimants of a fund in his hands to interplead, he must satisfactorily show to the court that their claims have such a "foundation in law as will create a reasonable doubt" as to his safety in undertaking to determine for himself to whom the fund belongs.' *Franklin v. Southern Railway Co.*, 119 Ga. 855 (47 SE 344)." *Smith v. Folsom*, 190 Ga. 460, 465 (9 SE2d 824); see OCGA § 23-3-90. " 'It must appear from the allegations of the petition that the conflicting claims of the defendants are of such character as to render it doubtful or dangerous for the plaintiff to act. . . .' " *Reed v. Metro. Life Ins. Co.*, 206 Ga. 604, 605 (58 SE2d 183). "While it is not incumbent upon the [holder] to decide at its peril either close questions of fact or nice questions of law, nevertheless, when [the holder] is in possession of all the facts and the questions of law are not intricate or debatable, a petition for interpleader will be denied. [Cits.]" *Mandeville v. First Nat. Bank*, 206 Ga. 426, 429 (57 SE2d 553). " 'A stakeholder is not entitled to protection by a court of equity to the extent of being saved from all shadow of risk; and so when *he is in possession of all the facts* and there is no question of law which is reasonably debatable, his petition for interpleader should be denied.' " *Lilley v. Nixon*, 214 Ga. 548, 550 (105 SE2d 716); accord *Calhoun v. Lawrence*, 217 Ga. 423, 424 (122 SE2d 576). The facts were known to Northside, as they were responsible for communications between the parties. We find no foundation in law as to create a reasonable doubt as to its safety in undertaking to dispense the earnest money in accordance with the clear terms of the contract. Northside was not entitled to interpleader as justification for withholding disposition of the funds in accordance

with the contract.

We can easily understand the desire of Northside to please both parties to the contract and thus prevent a controversy over entitlement to the earnest money. But that problem should have been resolved in the original contract, if Northside wanted to dispense the funds in accordance with the Commission's regulations. The Regulations of the Real Estate Commission are neither a panacea nor a shield which will insulate a real estate broker from compliance with the clear terms of a realty contract to which it is a party. Even if reliance is placed upon the Code, OCGA § 43-40-20 (f) requires that earnest money deposited in an escrow account "shall be maintained until disbursement is made *under the terms of the encumbrance pertaining thereto. . . .*" (Emphasis supplied.) Hence, the Code places above all else, compliance with the contract, and the contract in the case at the bar required return of the "earnest money" upon the "[b]uyer's default. . . ." The trial court erred in granting summary judgment to Callahan and Northside on appellants' claim for damages for refusal of appellees to return their earnest money following rescission of the contract, in accordance with the terms of their agreement.

3. It is argued that the court erred in granting summary judgment to Boyd, Boyd Properties, and Anderson Park Apartments, because the financing provisions of the sales contract were inserted "for the protection of the appellants and clearly could have been and was waived by appellants" and were not a condition precedent. Appellants' argument addresses only a portion of this issue. Although the financing condition was inserted for the benefit of appellants, it was a condition that could have prevented enforcement of the contract by appellees, thus was a condition precedent as to them. OCGA § 13-3-4; *Nalley v. Harris*, 176 Ga. App. 553 (2) (336 SE2d 822); *Parker v. Averett*, 114 Ga. App. 401 (2) (151 SE2d 475). When appellants could obtain a loan only for the amount of $1,100,000, which was $40,000 below the contract condition, and Roberts requested the realty agent to ask the seller to restructure the secondary financing to include the missing $40,000, this definitely was an additional condition attempted to be inserted in the contract, and to which no mutual assent had been given.

For there to be a valid contract, there must be a subject matter, a consideration, and mutual assent by all parties to all the terms. OCGA § 13-3-1. The subsequent communication by one party to the contract to the other party "varying only one term of the original offer" is a counteroffer. *Stubbs v. Tattnall Bank*, 244 Ga. 212, 213 (259 SE2d 466). The fact that the offeror may have intended something else does not alter the fact that appellants did tender a counteroffer to appellees. Id. at 214. Acceptance of an offer must be unconditional, unequivocal, and without variance of any sort, otherwise, there can be

no meeting of the minds and mutual assent necessary to formation of a contract. *B. L. Montague Co. v. Somers*, 94 Ga. App. 860, 864 (96 SE2d 629). In the instant appeal, this issue is of doubtful significance. The original contract had expired by its own terms. The date for closing, as verbally extended, had passed, including the one requested by appellants (mid-month of July), and the one granted by appellees (July 19). Thereafter, the letter from appellant, dated July 30, offering to close on July 31 in accordance with the original offer, was merely an attempt to revive a contract no longer in existence and such offer was ineffective unless accepted. *W. B. Leedy & Co. v. Shirley*, 97 Ga. App. 801, 807 (1) (104 SE2d 580). The appellants' offer was not accepted. The belated attempt to revive an expired contract with a changed condition was legally ineffectual. It is not material that appellants may have "[a]t all times . . . had the additional $40,000 at [their] disposal," because the counteroffer they communicated to the seller was an offer to revise the original contract by adding an additional $40,000 to the seller's secondary financing. And, whether the extension obtained by Callahan from the seller was to "mid-month" (July 15) or to July 19, is not germane to any issue because appellants admitted they were informed that their requested extension had been approved, and both dates had passed when appellants attempted to revive the expired contract. This enumeration is without merit.

4. Appellants allege the trial court erred in denying their motion for summary judgment as to the counterclaim of Boyd, Boyd Properties and Anderson Park Apartments based on the filing of the lis pendens notice, concurrent with the filing of their complaint. The complaint alleged a breach of a sales contract for realty and asked for specific performance, among other relief. For there to be " ' "a valid and effective lis pendens, it is essential that three elements be present . . . [1] the property must be of a character to be subject to the rule; [2] the court must have jurisdiction both of the person and the subject-matter; and [3] the property involved must be sufficiently described in the pleadings." ' " *Scroggins v. Edmondson*, 250 Ga. 430, 432 (297 SE2d 469). The case at the bar met these criteria. "The only purpose of the lis pendens statute is to notify persons who are not parties to a pending suit involving realty that any judgment or decree rendered in the cause will be binding on them. . . ." *Kenner v. Fields*, 217 Ga. 745, 747 (125 SE2d 44), overruled in part, on other grounds, 250 Ga. 430, fn. 1 at 431 (297 SE2d 469). The mere filing of an action involving realty will not operate as a lis pendens to such realty (OCGA § 44-14-610) unless filed with the clerk of the court and placed on the lis pendens docket. OCGA § 44-14-611. Hence, for a litigant's action involving realty to place the world on notice and to bind the public as to the outcome, it is necessary to file lis pendens.

An owner of realty may bring an action for libel or slander which falsely and maliciously impugn his title, if any damage accrues to him. OCGA § 51-9-11. However, this tort is subject to the privilege of OCGA § 51-5-8 accorded all " 'regular pleadings filed in a court of competent jurisdiction. . . .' " *Berger v. Shea*, 150 Ga. App. 812, 813 (258 SE2d 621); accord *Ferguson v. Atlantic Land &c. Corp.*, 248 Ga. 69 (3) (281 SE2d 545). Lis pendens may not be predicated upon an action which seeks merely to recover a money judgment (*Watson v. Whatley*, 218 Ga. 86, 88 (126 SE2d 621)), but the property itself must be directly "involved" in the pending suit. *Evans v. Fulton Nat. Mtg. Corp.*, 168 Ga. App. 600, 601 (309 SE2d 884). In the case sub judice, appellants requested specific performance of the contract requiring the property involved to be sold to them. The property was directly involved. *Hill v. L/A Mgt. Corp.*, 234 Ga. 341 (216 SE2d 97). Lis pendens was proper, the pleadings were privileged, and its filing is simply notice of the suit — not defamation of the title. *Berger*, supra. The trial court erred in denying appellants' motion on appellees' counterclaim involving lis pendens.

5. We find no error in the trial court's denial of appellants' motion for attorney fees based upon an allegation that Boyd's motion for summary judgment and amended counterclaim "lacks substantial justification and was either interposed for delay or harassment." We have sustained the grant of appellees' motion for summary judgment and the trial court found sufficient merit to the counterclaim to reserve that issue for trial. Although we have reversed the trial court's judgment as to the counterclaim on the lis pendens issue, we do not find such issue to be frivolous. OCGA § 9-15-14; see also *Yost v. Torok*, 256 Ga. 92 (344 SE2d 414).

*Judgment affirmed in part and reversed in part. Deen, P. J., and Pope, J., concur.*

DECIDED JUNE 23, 1988.

*Glenn S. Bass*, for appellants.
*Jay M. Barber, Richard P. Decker, Frederick G. Boynton, Edward H. Wasmuth, Jr., Harold L. Russell*, for appellees.
*Quinton S. King*, amicus curiae.