A08A2030. MEADOW SPRINGS, LLC v. IH RIVERDALE, LLC et al.

(675 SE2d 290)

PHIPPS, Judge.

Meadow Springs, LLC (MS) brought this suit charging IH Riverdale, LLC (IH) and Geoffrey Nolan with various torts based on their filing and delivery to a third party of a notice of lis pendens in the suit giving rise to *IH Riverdale, LLC v. McChesney Capital Partners, LLC*.[1] Finding no impropriety in the notice of lis pendens, the trial court granted IH and Nolan's motion for summary judgment and denied MS's motion for partial summary judgment. MS appeals. We affirm.

---

[1] 280 Ga. App. 9 (633 SE2d 382) (2006).

IH and McChesney Capital Partners, LLC (MCP) formed River-dale Capital Investments, LLC (RCI) to develop an apartment complex known as Meadow View Apartments on a tract of land in Clayton County referred to as the Phase I property. IH, Nolan (who is IH's owner), MCP, and George McChesney (who is MCP's owner) contemplated that RCI or an associated entity would later develop another apartment complex on adjacent land known as the Phase II property.

In January 2001, MCP, acting in furtherance of the parties' venture, entered into an agreement to purchase the Phase I property. In the purchase agreement, the seller agreed that at closing it would grant MCP an option to purchase the Phase II property. In April 2001, MCP assigned one-half of its right, title and interest in the January 2001 purchase agreement and in its Phase II option agreement to IH. The assignment agreement stated that IH and MCP, as owners of RCI, would define the terms of the option agreement in an operating agreement to be executed later.

In June 2001, RCI closed its purchase of the Phase I property and obtained the option to purchase the Phase II property. As agreed, MCP and IH later executed an operating agreement defining IH's rights in the Phase II option. In this regard, the operating agreement, in § 5.11 (e), recognized that the Phase II option remained in force but, instead of granting IH any rights in the option itself, gave IH "the first right of refusal to invest in the Second Phase." Section 5.11 (e) further provided that if IH elected to invest, it would have the right to invest from 25 to 50 percent of the capital and receive a proportionate share of the profits. But § 5.11 (e) further stated that if RCI elected to sell the option or "flip" the Second Phase land for a profit, IH would be entitled to 40 percent of the profits.

To qualify the Phase II property for use in a like-kind exchange under § 1031 of the Internal Revenue Code, MCP created MS as an intermediary to acquire and develop the Phase II property; and MCP assigned the Phase II option to MS. Ownership of MS was placed in the name of MCP's attorney as agent for MCP.

In April 2003, MS exercised the option to purchase the Phase II property, closed its purchase of the property, and began to develop it. At some point, MCP also unilaterally amended its operating agreement with IH to delete IH's rights in § 5.11 (e). To finance construction of the apartment complex, MS obtained a short-term $1.5 million construction loan and gave the lender a security deed to the Phase II property. Subsequently, Regions Bank approved MS's application for a longer-term $9.7 million development loan.

In August 2003, however, Nolan and IH filed a complaint in the Superior Court of Fulton County against MCP, RCI, MS and others (the MCP defendants), complaining of the breach of its rights under

§ 5.11 (e). In the suit, IH and Nolan filed a notice of lis pendens stating that relief was being sought involving the Phase II property. After IH and Nolan delivered a copy of the complaint and notice of lis pendens to Regions Bank, the bank elected not to close the development loan with MS. Although IH and Nolan later cancelled their notice of lis pendens and withdrew their claims to any direct interest in the Phase II property as part of an agreement with the MCP defendants to mediate their dispute, mediation efforts failed. And MS defaulted on the construction loan and lost its equity in the property due to foreclosure of the deed securing the construction loan.

As a result, MS brought this suit against IH and Nolan in the State Court of Fulton County, claiming slander of title and tortious interference with contractual rights and economic opportunities. MS moved for partial summary judgment with respect to certain elements of its slander of title claim, arguing that, as a matter of law, IH and Nolan's filing of the notice of lis pendens was improper. IH and Nolan filed a cross-motion for summary judgment, arguing that, as a matter of law, their filing of the notice of lis pendens and delivery of the notice to Regions Bank were proper.[2]

In the suit by IH and Nolan, however, the issue of the propriety of the notice of lis pendens was raised when the MCP defendants filed an emergency motion for cancellation of the notice of lis pendens. The superior court denied the emergency motion, finding the filing of the notice of lis pendens proper on the ground that there was a basis for imposition of a constructive trust or equitable lien against the Phase II property if IH and Nolan were to prevail in their suit. This court denied the MCP defendants' application for interlocutory appeal of the order denying their emergency motion. We later held in *IH Riverdale* that there are material issues of fact on the question of whether the MCP defendants breached IH and Nolan's right of first refusal to participate as an investor in the development of the Phase II property.[3]

After our decision in *IH Riverdale* and following the parties' submission of briefs on their opposing summary judgment motions in this suit, this case was transferred to the Business Case Division of the Fulton Superior Court. Following a motion hearing in superior court, that court entered an order finding the filing and publication of the notice of lis pendens proper and thus granting IH and Nolan's

---

[2] In support of their motion for summary judgment, IH and Nolan also argued that MS could not claim that it acquired the Phase II property as a bona fide purchaser for value and without notice of IH and Nolan's claim. MS does not, however, make such a claim.

[3] 280 Ga. App., supra at 9-14 (1).

motion for summary judgment and denying MS's motion for partial summary judgment.

1. MS contends that the trial court erred in finding IH and Nolan's filing of the notice of lis pendens proper and in thereby granting summary judgment in favor of IH and Nolan and in denying MS's motion for partial summary judgment.

The purpose of a lis pendens is to notify prospective purchasers or other interested persons who are not parties to the suit that a particular property is the subject of pending litigation which seeks relief respecting some legal or equitable interest in such realty.[4]

> For a lis pendens to be valid, the real property must be "involved" in the suit according to the meaning of OCGA § 44-14-610, the statute that authorizes it. That means it must be property that is actually and directly brought into litigation by the pleadings in a pending suit and as to which some relief is sought respecting that particular property. A lis pendens may not be based only on money damages.[5]

Under OCGA § 44-14-610, "[a] lis pendens becomes effective upon filing in the office of the superior court clerk."[6] If notice of the suit is filed on the lis pendens docket in the office of the clerk of the superior court where the land lies, the action is notice to the world, and one who thereafter acquires an interest in the property would be affected by the relief granted in the suit.[7]

Relying on cases such as *Scroggins v. Edmondson*[8] and *Jay Jenkins Co. v. Financial Planning Dynamics*,[9] IH and Nolan argue that the Phase II property was "involved" in their suit within the meaning of the lis pendens statute. Citing cases such as *Ga. Dist. Council of the Assemblies of God v. Atlanta Faith Mem. Church*,[10] MS argues otherwise.

In *Scroggins*, a trustee in bankruptcy sued an officer of a bankrupt corporation, claiming that the officer had caused the corporation, while insolvent, to repay a corporate indebtedness secured by real property the officer owned in preference to other corporate debts. The trustee complained that there had been a

---

[4] See *Hudson v. Dobson*, 260 Ga. App. 473, 474 (1) (580 SE2d 268) (2003); *Panfel v. Boyd*, 187 Ga. App. 639, 646 (4) (371 SE2d 222) (1988).

[5] *Hudson*, supra (citations and punctuation omitted).

[6] *Kennedy v. W. M. Sheppard Lumber Co.*, 261 Ga. 145, 147 (2) (401 SE2d 515) (1991).

[7] See *Wilson v. Blake Perry Realty Co.*, 219 Ga. 57, 58 (131 SE2d 555) (1963).

[8] 250 Ga. 430 (297 SE2d 469) (1982).

[9] 256 Ga. 39 (343 SE2d 487) (1986).

[10] 267 Ga. 59 (472 SE2d 66) (1996).

fraudulent transfer of the real property. *Scroggins* concluded that the property was involved in the suit, since a trust or lien could be imposed on the property if the trustee prevailed.[11]

The plaintiffs in *Jay Jenkins* claimed that they were joint venturers with the defendants in certain real estate development projects, that properties which had been titled in the plaintiffs were conveyed to the defendants to enable them to obtain financing on the properties, and that the defendants had breached the joint venture agreements by not allowing the plaintiffs to share in the ventures' profits. The plaintiffs asked that the properties be impressed with constructive trusts and that they be awarded damages. Because it could not be said that, as a matter of law, the plaintiffs would not be entitled to have trusts impressed on the properties, *Jay Jenkins* found the filing of a notice of lis pendens proper.[12]

In *Assemblies of God*, however, the plaintiff sought to impress a constructive trust on certain real property on grounds that the plaintiff had held a reversionary interest in the property when it was sold by the defendant. "A constructive trust arises with respect to property the title to which was acquired by fraud, or where although acquired originally without fraud, it is against equity that the title should be retained by the one who holds it."[13] Concluding that the plaintiff had no reversionary interest in the property, *Assemblies of God* found no basis for imposition of a constructive trust.

This case is more akin to *Scroggins* and *Jay Jenkins* than to *Assemblies of God*. It is true that, as argued by MS, IH and Nolan never had an option to purchase the Phase II property and thus no claim to legal title. But as recognized in *IH Riverdale*, IH and Nolan did have "a right of first refusal to participate in the development" of the property.[14] Therefore, as in *Jay Jenkins*, we cannot say that as a matter of law IH and Nolan would not be entitled to any equitable relief with respect to the property. Consequently, the property was "involved" in their suit when the notice was filed and delivered to Regions Bank. As a result, IH and Nolan's later amendment of their complaint to delete their claims to any direct interest in the property is not material to the issues presented in this suit. And notwithstanding MCP's later unilateral amendment of the operating agreement to delete IH's right of first refusal in § 5.11 (e), we held in *IH Riverdale* that material issues of fact remain as to whether the MCP defendants breached that right.

---

[11] 250 Ga., supra at 433.

[12] 256 Ga., supra at 42 (4) (b).

[13] 267 Ga., supra at 61-62 (citation and punctuation omitted).

[14] 280 Ga. App., supra at 9 (1).

2. MS contends that the trial court erred in granting summary judgment in favor of IH and Nolan by finding delivery of the notice of lis pendens to Regions Bank privileged under OCGA § 51-5-8.

"OCGA § 51-5-8 grants an absolute privilege to 'all charges, allegations, and averments contained in regular pleadings filed in a court of competent jurisdiction. . . .' "[15] "But the absolute privilege has not been extended to publishing the contents of official court documents outside the judicial process. That is covered by the conditional privileges found in OCGA § 51-5-7."[16] Nonetheless, we have not "strictly limited the privilege under OCGA § 51-5-8 to 'pleadings' as they are defined under OCGA § 9-11-7 (a)."[17] Rather, the absolute privilege afforded by OCGA § 51-5-8 has been more broadly construed to cover the filing of a notice of lis pendens, so long as the lis pendens is itself proper in the suit.[18] Because the filing of a notice of lis pendens is in and of itself a publication of the notice, further publication by actual delivery of the notice to interested third parties remains privileged under OCGA § 51-5-8 where, as here, the notice was properly filed.

*Judgment affirmed. Johnson, P. J., and Barnes, J., concur.*

DECIDED MARCH 11, 2009 —

*Heyman & Sizemore, William B. Brown, Jacqueline Marcucci,* for appellant.

*Adorno & Yoss, David L. Pardue, Hartman, Simons, Spielman & Wood, Christopher S. Badeaux,* for appellees.

---

[15] *O'Neal v. Home Town Bank of Villa Rica,* 237 Ga. App. 325, 332 (8) (514 SE2d 669) (1999).

[16] Id.

[17] Id. (punctuation and footnote omitted).

[18] See id.; *South River Farms v. Bearden,* 210 Ga. App. 156, 158 (435 SE2d 516) (1993).