529 N.W.2d 362 (1995)
Laxman S. SUNDAE, Appellant,
v.
Bradley SCOT as individual and as employee of Towncrest Management, Inc.; et al., Defendants,
Thomas Thorstenson, et al., as individuals and as the employees of City of Minneapolis, and the City of Minneapolis, Respondents.
No. C9-94-1884.
Court of Appeals of Minnesota.
March 21, 1995.
Review Denied May 31, 1995.
Kenneth Hertz, John W. Tackett, Hertz & Associates, P.A., St. Anthony, for appellant.
*363 Surrell Brady, City Atty., Peter W. Ginder, Asst. City Atty., Minneapolis, for respondents.
Considered and decided by HUSPENI, Presiding Judge, HARTEN, and FOLEY,[*] JJ.

OPINION
HUSPENI, Judge.
The district court granted summary judgment, concluding that appellant's claims are part of the bankruptcy estate and that appellant lacked standing to bring the causes of action. Because we conclude that appellant's claims for defamation and abuse of process arise out of his involvement with prepetition property that is included in the bankruptcy estate, we affirm as to these claims. Because we conclude that appellant's claim for racial discrimination is personal to appellant, we reverse as to that claim.

FACTS
In July 1990, appellant Laxman S. Sundae filed a petition in bankruptcy pursuant to "Chapter 11 of the Bankruptcy Code." Appellant alleges that at a series of meetings held on April 16, 1991; May 7, 1991; June 4, 1991; June 18, 1991; August 4, 1992; and August 18, 1992, various members of the coordinated neighborhood action plan task force (CNAP) made slanderous statements about him. CNAP subsequently published the minutes of the meetings and distributed copies to the general public. The minutes refer to the condition of real property owned, transferred, or abandoned by appellant and to the property's status in the bankruptcy proceedings.
In April 1993, appellant filed a complaint against respondents, alleging six counts of libel and slander, one count of racial discrimination, and one count of abuse of process, all arising from CNAP meetings held after the filing of the petition.[1] Respondents successfully moved for summary judgment alleging that appellant lacked standing to bring the case because the causes of action were property of the bankruptcy estate.

ISSUE
Did the district court err in granting summary judgment based on the conclusion that appellant's causes of action were the property of the bankruptcy estate and appellant lacked standing to bring the causes of action?

ANALYSIS
On appeal from summary judgment, a reviewing court must determine whether there are any genuine issues of material fact and whether the lower court erred in its application of the law. State by Cooper v. French, 460 N.W.2d 2, 4 (Minn.1990).
Property of a bankruptcy estate is broadly defined by section 541 of the Bankruptcy Code. It includes all legal and equitable interests the debtor held in property upon the filing of the bankruptcy petition, including causes of action. Section 541(a)(1); H.R.Rep. No. 595, 95th Cong., 1st session 367-68 (1977); S.Rep. No. 989 95th Cong., 2nd session 82-83 (1978); U.S.Code Cong. and Admin.News p. 5787. Regardless of whether a personal injury claim is transferable or assignable under state law, such claims become part of the bankruptcy estate under section 541. Sierra Switchboard Co. v. Westinghouse Elec. Corp., 789 F.2d 705, 709 (9th Cir.1986).
The filing of a bankruptcy petition operates as a stay, restraining creditors from taking further action against the debtor, the debtor's property, or property of the estate, to collect their claims or enforce their liens. 11 U.S.C. § 362. 11 U.S.C. § 541(a)(7) includes in the property of the estate "[a]ny interest in property that the estate acquires after the commencement of the case." The one express stipulation that section 541(a)(7) imposes in exchange for the broad stay protection is that the interest in after-acquired *364 property must be acquired by "the estate." In re Brannan, 40 B.R. 20, 22 (Bankr.1984).[2]
The effect of section 541(a)(7) varies depending upon whether the bankruptcy proceeding is brought under chapter 7, chapter 11, or chapter 13. Id. at 22 n. 2.
In contrast to the establishment of two separate estates at the time of an individual debtor filing a Chapter 7 case, only one estate is established at the filing of a typical Chapter 11 case. The purpose of the Chapter 11 case is business reorganization. To this end, the debtor-in-possession submits a reorganization plan in order to rehabilitate and continue the operation of the business. All of the estates of the debtor, pre-petition and post-petition, are applied to the reorganization effort and must be dealt with in the plan for the benefit of creditors. Because the debtor is the business and success is measured by survival not liquidation, no individual or personal estate separate from the Title 11 Chapter 11 case is created at the time of filing.
Id.
We agree with the observation of the district court that the test for determining whether a given property interest is included in the estate is whether the property interest in question
is sufficiently rooted in the pre-bankruptcy past and so little entangled with the bankrupt's ability to make an unencumbered fresh start.
In re Doemling, 116 B.R. 48, 49 (Bankr. W.D.Pa.1991), aff'd 127 B.R. 954 (W.D.Pa. 1991) (quoting Segal v. Rochelle, 382 U.S. 375, 380, 86 S.Ct. 511, 515, 15 L.Ed.2d 428 (1966)).[3] The district court concluded that the defamation claims of appellant arise out of or are sufficiently rooted in his ownership of various rental property which he owned prior to the bankruptcy petition. The district court determined, therefore, that those claims were part of the bankruptcy estate, and appellant lacks standing to pursue an action in state court. We agree with the district court's categorization of appellant's claims for defamation and abuse of process and believe that appellant's reliance on Doemling to urge an opposite result is misplaced.
The Doemling court considered whether claims arising from postpetition personal injuries to a chapter 11 debtor arising from an automobile accident are property of the estate under section 541(a)(7). 116 B.R. at 48. The Doemling court noted that relatively few courts have been called upon to determine whether a property interest acquired postpetition in a chapter 11 case qualifies as property of the estate pursuant to section 541(a)(7), and concluded:
The following principle can, however, be extracted from certain of those cases: a property interest acquired postpetition during the pendency of a Chapter 11 case qualifies as property of the estate, for purposes of § 541(a)(7), only if said property interest is traceable to (or arises out of) some prepetition interest which already is included in the bankruptcy estate. See In re Acton Food Services Corp., 39 B.R. 70, 72 (Bankr.D.Mass.1984) (a cause of action which accrued postpetition was property of the bankruptcy estate because the injury was to a prepetition property interest which had become part of the bankruptcy estate upon the filing of the petition); also, In re Weyland, 63 B.R. 854, 864 (Bankr. E.D.Wis.1986) (a contract which was awarded post-petition was property of the bankruptcy estate because it was "sufficiently rooted" in the debtor's prebankruptcy past and because its inclusion in the bankruptcy estate would not impair the *365 debtor's ability to make an unencumbered fresh start).
Id. at 50.
The United States District Court affirmed Doemling, stating that "Segal is still good law and presents the best framework for analyzing the facts of this case." 127 B.R. 954, 957 (W.D.Pa.1991), aff'g 116 B.R. 48 (W.D.Pa.1991). The court then concluded that:
The Doemlings' potential causes of action as a result of Mrs. Doemling's accident are quite obviously not rooted in their prebankruptcy past.
Id.
The present case can be distinguished from Doemling. In his complaint, appellant alleges that the statements attributed to respondents conveyed a "negative impression upon a reader about [appellant's] reputation, financial abilities and business stability." The complaint further alleges that appellant suffered embarrassment, extreme emotional distress and great humiliation "both professionally and socially." These alleged defamatory statements involve rental property owned by appellant prior to filing the bankruptcy petition. Similarly, appellant's abuse of process claim involves the distribution and entering into public records of the meeting minutes discussing appellant's ownership of the rental property, and respondents' alleged failure to protect appellant's business. We conclude, as did the district court, that appellant's defamation and abuse of process claims are "sufficiently rooted in the prebankruptcy past and so little entangled with [appellant's] ability to make an unencumbered fresh start."
We reach a different conclusion, however, with regard to appellant's claim of racial discrimination. See Doemling, 116 B.R. at 49. Appellant, in that claim, states:
Plaintiff herein is a native of India. On account of plaintiff's color and national origin, the City of Minneapolis failed to provide adequate protection and equal treatment of law and further permit[ted] defendants * * * to enter defamatory statements in the public records and permit these defendants to harass this plaintiff in violation of [the] State of Minnesota Human Rights Act.
Appellant's claim of racial discrimination is analogous to the cause of action in Doemling:
The property at issue is a cause of action stemming from a tort inflicted upon the person of Mrs. Doemling. The Doemlings acquired whatever property interest they have in that cause of action in their personal capacities. The estate did not acquire this cause of action independent of the Doemlings. Any recovery in this cause of action would be to compensate the Doemlings for injuries to their persons. It would not compensate for any injury to the estate itself.
Doemling, 127 B.R. 954, 955-56 (W.D.Pa. 1991), aff'g 116 B.R. 48 (W.D.Pa.1991). Similarly, because appellant's racial discrimination claim arises out of his national origin, it is personal to him in a way that his other claims are not. We conclude that this claim is not part of the bankruptcy estate and the district court erred in granting summary judgment for respondents on appellant's claim of racial discrimination.
Appellant raises a number of other arguments in his briefs, including: postbankruptcy recovery in civil tort claims is analogous to postbankruptcy earnings and should be excluded from the debtor's bankruptcy estate; a cause of action that arises more than 180 days after the filing of a bankruptcy petition is not part of the debtor's bankruptcy estate; a cause of action for defamation and discrimination is not assignable to the bankruptcy estate; the causes of action vested with appellant because they were not included in the plan; the causes of action are exempt property; and prepetition causes of action should be distinguished from postpetition causes of action. We have carefully considered appellant's arguments under these additional theories and find them to be without merit.

DECISION
Because we conclude that the claims for defamation and abuse of process arise out of the real property that already is included in the bankruptcy estate, we affirm the district court's order of summary judgment with respect *366 to these claims. Because appellant's claim for racial discrimination is personal to appellant, we reverse the district court's grant of summary judgment on this issue and remand for further proceedings.
Affirmed in part, reversed in part and remanded.
NOTES
[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.
[1] The bankruptcy court had confirmed appellant's chapter 11 reorganization plan in July 1992, after four of the meetings and before the other two.
[2] Brannan added that the type of interest contemplated by the new subsection was explained by representative DeConcini:

For example, if the estate enters into a contract after the commencement of the case, such a contract would be property of the estate.
Id. at 22 n. 1 (citing 124 Cong. Record 17406 (Daily Ed. Oct. 6, 1978) Norton Bankruptcy Law and Practice Vol. 4, pp. 425-26).
[3] At oral argument, respondent argued the applicability of In re Griseuk, 165 B.R. 956 (Bankr. M.D.Fla.1994), 382 U.S. at 380, 86 S.Ct. at 515. Because we believe that Segal presents the best framework for analyzing the facts of this case, we conclude that Griseuk's analysis is inapplicable here. We also note that Griseuk has been criticized. See In re Winom Tool & Die, Inc., 173 B.R. 613, 624 (Bankr.E.D.Mich.1994).