## A98A0579. AHC PHYSICIANS CORPORATION, INC. v. DULOCK.
## A98A0580. AMERICAN HEALTHCHOICE, INC. v. DULOCK.
(504 SE2d 464)

SMITH, Judge.

This appeal arises out of the trial court's construction of an employment agreement executed between Malcolm Dulock and appellant AHC Physicians Corporation, Inc. Dulock brought this action against appellants after he was terminated from employment, and the trial court granted partial summary judgment to Dulock, concluding that AHC failed to comply with certain notice provisions under the agreement. We disagree and reverse.

In September 1995, Dulock sold his medical clinic to AHC.[1] In connection with the sale, Dulock and AHC executed an agreement by which Dulock remained employed by the clinic for an initial term of five years. The agreement provided that Dulock would be terminated "for cause" if one of several events occurred. Those events included the following: "Whenever, except due to incapacity, employee fails or refuses to perform faithfully and diligently the duties of employment and comply with the provisions of this agreement, which breach is not cured within thirty (30) days following employee's receipt of written notice of such breach from employer." Another subsection contained essentially the same language requiring written notice to Dulock of his alleged breach, except that it addressed failure or refusal "to comply with the reasonable policy standards and regulations" of the employer.

Dulock filed this action after his employment was terminated on June 2, 1997. On motion for summary judgment, the trial court ruled as a matter of law that a series of writings sent to Dulock by AHC and American HealthChoice failed to satisfy the requirement that Dulock be given 30 days notice of breach of the employment agreement. We do not agree.

During the months leading to Dulock's termination, letters and memoranda were sent to him expressing AHC's dissatisfaction with his failure to follow instructions of the company's officers and his failure to act in the company's best interest. Included in those writings was a memorandum dated March 20, 1997 from the chief financial officer and general counsel, Jay Stucki. The memorandum addressed Dulock's refusal to comply with AHC's direction to reduce staffing at the clinic in an effort to reduce expenses. Stucki stated, "Something is amiss. . . . I am willing to start with a clean slate but make no mistake: this letter serves you formal notice that we must have your

---

[1] Appellant American HealthChoice, Inc. is a successor in interest to the corporation serving as guarantor of AHC's obligations under the agreements executed in connection with the sale of the clinic.

full cooperation. *I will not tolerate the past acts of you bad mouthing the company, refusing to make needed cuts to improve clinic profitability, or any thing that deliberately sabotages [the company's] Georgia interests.* You assured me I have your cooperation and I appreciate your verbal assurance. Now show me by action." (Emphasis supplied.)

According to Stucki, Dulock did not change his actions in response to this memorandum, and on April 21, 1997, the CEO of American HealthChoice wrote a letter to Dulock concerning the decision of the board of directors of American HealthChoice. The letter recited that the board believed it had sufficient reasons to terminate Dulock for cause. The CEO then implored Dulock to cooperate in an attempt to "turn the clinic around." In a subsequent letter to Dulock concerning his behavior toward a representative of a company retained to evaluate the clinic's problems and possibly to manage the clinic, the CEO "strongly suggest[ed]" that Dulock apologize and that he expected Dulock's "full cooperation" with the consulting company. Evidence was presented that Dulock failed to follow these directions, and by letter dated May 5, 1997, he was placed on administrative leave for two weeks.[2] Stucki stated in his affidavit that in May 1997, he learned of several actions taken by Dulock during this administrative leave showing that he continued to "sabotage the clinic and to fight with and undermine management." According to Stucki, because of these actions and Dulock's "refusal to correct the problems that [Stucki] had warned him to correct in [his] March 20 memorandum," Dulock's employment was terminated June 2, 1997.

Notice provisions in contracts "must be reasonably construed." *APAC-Ga. v. Dept. of Transp.*, 221 Ga. App. 604, 606 (472 SE2d 97) (1996). And the purpose of the notice requirement in Dulock's employment contract "is not difficult to fathom." *State Hwy. Dept. v. Hall Paving Co.*, 127 Ga. App. 625, 628 (194 SE2d 493) (1972). It served to notify Dulock of a breach and to give him an opportunity to cure it. Construing the notice requirement in Dulock's employment agreement reasonably and bearing in mind its purpose, Dulock clearly was given written notice of breach. Although the writings sent by AHC to Dulock may not have stated in so many words that Dulock had breached his employment agreement, they were more

---

[2] The letter set forth several conditions of his leave. He was forbidden entry into the clinic and was told not to contact clinic employees. He was directed that no materials were to be removed from the premises and that he was not to contact anyone who did business with the clinic. The letter also required him to cease making "disparaging comments" about the company and disclosing confidential information about the company's plans. In addition, the letter advised Dulock that he was no longer responsible for management of the clinic or its other operations and that his cooperation was expected concerning the transition to new management.

than mere criticisms of his performance, as Dulock contends. The March 20 memorandum listed actions previously taken by Dulock that were unacceptable to and would not be tolerated by the company. It plainly stated that it served as "formal notice" that Dulock's cooperation was required, therefore giving Dulock opportunity to "cure" his past actions. But even assuming that the March 20 memorandum did not sufficiently provide notice of breach to Dulock, the April 21 letter from the CEO certainly did. The letter plainly stated that the board of directors felt that it had sufficient reason to terminate Dulock, which could only be done for cause, i.e., if he breached the terms of his employment agreement. The CEO then provided Dulock another opportunity to cure his breach by expressing his desire that Dulock work with him in making changes concerning the clinic. The trial court erred in concluding that AHC failed to comply with the notice provision in the employment agreement.

This case is distinguished from those relied upon by Dulock. *King Industrial Realty v. Rich*, 224 Ga. App. 629 (481 SE2d 861) (1997) and *American Sewer Pipe Co. v. Mathews*, 19 Ga. App. 248 (91 SE 284) (1916) address the failure of employers to comply with provisions in employment contracts requiring notice of termination. The contract here required notice of *breach*. And the difference between the two concepts is one of purpose: While notice of termination would give an employee time and opportunity to find other employment, notice of breach, as contemplated by the contract in this case, would afford Dulock time and opportunity to cure the breach and remain employed.

Similarly, *Johnson v. Kahrs*, 199 Ga. 365 (34 SE2d 503) (1945) is not controlling. The employment agreement in that case required 30 days notice of dissolution of the agreement, not 30 days notice of breach. Id. at 366. The employers gave the employee notice of dissolution because of his alleged misconduct and sent him a check for one month's salary. Id. The Supreme Court concluded that this action did not comply with the notice requirement, because it involved a forfeiture of the employee's right to become a partner in the business. The notice provision did not serve "merely to insure the defendant 30 days in which to seek other employment in the event that the contract was dissolved." Id. at 367. Rather, the requirement provided the employee an opportunity to attempt to convince his employers "that their deductions as to his conduct were wrong," id., and thereby pursue his right under the contract to become a partner. Here, the notice requirement was designed to give Dulock the chance to cure his breach. Dulock was afforded this chance on more than one occasion, well in advance of 30 days before his employment was terminated, and partial summary judgment in his favor was not warranted.

*Judgment reversed. Johnson, P. J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED JUNE 17, 1998.

*Webb, Tanner & Powell, Ralph L. Taylor III, L. Dale Owens,* for appellant.

*Fine & Block, Kenneth I. Sokolov, Chilivis, Cochran, Larkins & Bever, Anthony L. Cochran, John K. Larkins, Jr.,* for appellee.