A01A0859. WALLICK v. PERIOD HOMES, LTD.
(555 SE2d 863)

MILLER, Judge.

The question on appeal is whether a Chapter 11 bankruptcy debtor, whose petition has been discharged after all debts are paid, is

judicially estopped from pursuing a claim against a party who allegedly breached a contract to buy the bankruptcy estate's primary asset, which claim was never added to the bankruptcy's asset schedule. We hold that the cause of action was a proceed or product of a scheduled asset of the bankruptcy estate and that no clear mandate obligated the debtor to supplement the asset schedule to add this as a separate asset. Accordingly, judicial estoppel does not apply to bar the action.

While in a Chapter 11 bankruptcy, Douglas Wallick as debtor in possession contracted to sell the bankruptcy estate's primary asset — real estate owned by him and some co-tenants — to Period Homes, Ltd.[1] for $800,000. Period Homes terminated the contract, ostensibly because it could not timely obtain needed governmental approvals for the proposed use of the property. The landowners then sold the property to another party for $730,000. The bankruptcy was converted to a Chapter 7 bankruptcy, and after the Chapter 7 trustee paid all claims, the trustee had surplus proceeds of $61,000, which he turned over to Wallick.

Wallick then brought this action against Period Homes for breach of contract and moved for summary judgment, arguing that the evidence was undisputed that Period Homes had failed to pursue the needed governmental approvals in good faith as required by the contract. Period Homes also moved for summary judgment, arguing that Wallick's failure to amend his Chapter 11 bankruptcy schedules to include this cause of action as a separate asset barred the action under the doctrine of judicial estoppel. The trial court granted summary judgment in favor of Period Homes on the ground of judicial estoppel and denied Wallick's motion. Wallick appeals both rulings.

1. The doctrine of judicial estoppel was first followed in Georgia in *Southmark Corp. v. Trotter, Smith & Jacobs*[2] and precluded a party from asserting in a judicial proceeding a position contrary to that successfully asserted in a prior proceeding. "The application of the doctrine preserves the integrity of the judicial forum by not permitting a debtor to take inconsistent positions to manipulate the system."[3] This doctrine is commonly applied to preclude the subsequent prosecution of an unliquidated tort claim that a discharged debtor fails to list as an asset in the federal bankruptcy petition.[4] The rationale is that the failure to reveal an asset (such as a cause of action) results in three problems: (1) it constitutes a denial that the asset exists, (2) it deprives the bankruptcy court of the information needed

---

[1] At that time Period Homes was known as Christian & Associates.

[2] 212 Ga. App. 454, 455 (442 SE2d 265) (1994).

[3] (Footnote omitted.) *Wolfork v. Tackett*, 273 Ga. 328, 329 (540 SE2d 611) (2001).

[4] Id. at 328.

to evaluate and rule on the bankruptcy petition, and (3) it deprives creditors of resources that may satisfy unpaid obligations.[5]

When the doctrine was first applied in *Southmark Corp.*, the debtor failed to list a cause of action that had accrued prior to the filing of the Chapter 11 bankruptcy petition.[6] Subsequent cases have extended the doctrine to preclude the assertion of claims that accrued after the filing of the petition but before discharge, where the bankruptcy laws have required the debtor to amend the asset schedules to include later-arising causes of action.[7] Notably, the cases so holding have involved bankruptcies under Chapter 13, which chapter expressly includes in the bankruptcy estate all 11 USC § 541 property acquired by the debtor after commencement of the case but before the case is closed, dismissed, or converted to a proceeding under Chapter 7, 11, or 12.[8]

Thus, the relevant question in this Court is whether federal bankruptcy law would require Wallick to amend his asset schedule to include the breach of contract claim which accrued pending the Chapter 11 bankruptcy before it was converted to a Chapter 7 bankruptcy. A thorough review of federal law provides no clear law requiring Wallick to amend his asset schedule.

To address this question, we first note that the breach of contract claim against Period Homes arose out of Wallick's attempt to sell property of his bankruptcy estate while his bankruptcy was pending. Since this property interest was clearly an asset of the bankruptcy estate, any proceeds, product, or profit from this property was by statute an asset of the estate.[9] Indeed, any interest in property that the *estate* (as opposed to the debtor) acquired after the commencement of the bankruptcy case became an asset of the estate.[10]

A tort or contract claim arising out of an attempt, during the bankruptcy, to sell bankruptcy estate property is considered a proceed, product, or profit of that property and thus is considered an asset of the estate. In *In re Acton Foodservices Corp.*,[11] Mr. Martin-Trigona filed for a Chapter 11 bankruptcy in 1980 that was later converted to a Chapter 7 bankruptcy in 1982. Before the conversion, Martin-Trigona in 1981 sold his interests in a radio station to Acton Corporation, which sale he subsequently claimed was fraudulent. The court held that the fraud claim belonged to the Chapter 7 trus-

---

[5] Id.

[6] Supra, 212 Ga. App. at 455-456.

[7] See, e.g., *Wolfork*, supra, 273 Ga. at 329; *Smalls v. Walker*, 243 Ga. App. 453, 456-457 (2) (532 SE2d 420) (2000).

[8] 11 USC § 1306 (a) (1).

[9] 11 USC § 541 (a) (6).

[10] 11 USC § 541 (a) (7); see *In re Doemling*, 116 Bankr. 48, 50 (W.D. Pa. 1990).

[11] 39 Bankr. 70 (D. Mass. 1984).

tee, reasoning that such was a proceed, product, or profit of the interest in the radio station, which was an asset of the estate:

> In the case at bar, any legal and/or equitable interests that Mr. Martin-Trigona may have had or asserts to have in [the radio station] became property of his Chapter 11 estate in 1980. Any cause of action that may have accrued from any federal or state violation of those rights subsequent to the Chapter 11 filing, including causes of action that arose out of the 1981 sale of the radio station, are the property of Mr. Martin-Trigona's Chapter 7 trustee.[12]

*In re Grosse*[13] similarly held that a claim arising out of the defendants' alleged tortious conversion of bankruptcy estate property was a " 'product' " of the estate property and thus was property of the estate.

In *In re Reed*,[14] the alleged negligence of certain defendants caused a fire that damaged the Chapter 7 bankrupt's personal property. The bankrupt sought to recover the damages, and the bankruptcy court held that the case was properly before it as a question involving "proceeds" of the estate, reasoning:

> To the extent the debtor's personal property, which existed as of the date of her filing bankruptcy, was damaged by the negligent conduct of the defendants, there is ample support for concluding that jurisdiction exists even though the negligence occurred postpetition. Although 11 USC § 541 (a) (1) refers to property interests "as of the commencement of the case," the debtor is correct that under 11 USC § 541 (a) (6) the estate includes the postpetition proceeds from such property interests. Those "proceeds" may include insurance payments or damage claims; the critical factor is that, although the right to payment arose postpetition, the property at issue was prepetition property which became part of the estate. [Cits.][15]

Stated differently, a property interest acquired postpetition during the pendency of a Chapter 11 case qualifies as property of the estate if the property interest is traceable to or sufficiently rooted in some prepetition interest which is already included in the bank-

---

[12] Id. at 72.
[13] 44 Bankr. 200, 202 (E.D. Pa. 1984) (Chapter 7 case).
[14] 94 Bankr. 48 (E.D. Pa. 1988).
[15] Id. at 52-53 (III).

ruptcy estate.[16] Thus, the damage claim here arising out of Period Homes's alleged breach of the contract to purchase the estate's primary asset is a "product" or "proceeds" of the estate, or at least is traceable to or sufficiently rooted in a prepetition interest that was already a part of the estate, and thus became property of the estate under 11 USC § 541 (a) (6) and (7).[17]

There is no authority which requires a debtor to amend or supplement his asset schedule to list proceeds or product of estate property as a separate asset on the asset schedule. Indeed, proceeds or product is implicit in the very listing of the original estate property out of which the proceeds or product arises. This is distinguishable from Chapter 13 cases where the duty to amend asset schedules arises and clearly includes causes of action accruing during the bankruptcy.[18] The duty to amend Chapter 11 asset schedules to include proceeds or product as separately listed assets of the estate is unclear. Absent a clear duty, we will not hold that the failure to amend those schedules to specify the proceeds or product of a listed asset operates as a denial that such proceeds or product exists so that a subsequent effort to pursue that proceeds or product should be barred under the harsh doctrine of judicial estoppel.

We recognize that two Georgia cases involve specifically Chapter 13 bankruptcies and may be read to confuse this issue with regard to Chapter 11 bankruptcies. Without any statutory analysis or citation to controlling authority, *Wolfork v. Tackett*[19] and *Kittle v. ConAgra Poultry Co.*[20] summarily concluded in obiter dicta that, like Chapter 13, Chapter 11 requires the debtor to amend his asset schedules to include all after-acquired causes of action. Since this is clearly dicta, it is not binding authority on this Court.[21] Notably, although there is some indirect authority for the conclusions of these two cases,[22] the overwhelming majority of the federal courts would indicate otherwise. The weight of authority holds that because Chapter 7 and

---

[16] *In re Doemling*, supra, 116 Bankr. at 50; *Sundae v. Scott*, 529 NW2d 362, 364 (Minn. App. 1995); see *Segal v. Rochelle*, 382 U. S. 375, 380 (86 SC 511, 15 LE2d 428) (1966); *Field v. Transcontinental Ins. Co.*, 219 Bankr. 115, 119, n. 7 (E.D. Va. 1998), aff'd, 173 F3d 424 (4th Cir. 1999).

[17] See *Haley v. Dow Lewis Motors*, 72 Cal. App.4th 497, 504-506 (I) (1999) (wrongful foreclosure on bankruptcy estate property is a claim that is property of estate); *Bostanian v. Liberty Sav. Bank*, 52 Cal. App.4th 1075, 1083-1085 (II) (C) (1997) (same).

[18] *Wolfork v. Tackett*, 241 Ga. App. 633, 634 (526 SE2d 436) (1999), aff'd, supra, 273 Ga. 328.

[19] Supra, 273 Ga. at 329.

[20] 247 Ga. App. 102, 105 (1) (a) (543 SE2d 411) (2000).

[21] See *Leach v. Aetna Cas. &c. Co.*, 172 Ga. App. 785, 786 (324 SE2d 494) (1984) (on motion for rehearing), aff'd, *Aetna Cas. &c. Co. v. Leach*, 254 Ga. 265 (330 SE2d 596) (1985).

[22] See *Chandler v. Samford Univ.*, 35 FSupp.2d 861, 864, n. 3 (N.D. Ala. 1999); *Brassfield v. Jack McLendon Furniture*, 953 FSupp. 1424, 1432 (1) (M.D. Ala. 1996); *In re Griseuk*, 165 Bankr. 956, 958-959 (M.D. Fla. 1994).

Chapter 11 of the Bankruptcy Code do not have the section found in Chapter 13 which expressly includes all after-acquired property of the debtor,[23] the only property belonging to a Chapter 7 or Chapter 11 estate which arises postpetition is that which falls into 11 USC § 541 (a) (6) or (7).[24] The federal cases do not directly address the duty to supplement schedules, but do hold that causes of action accruing postpetition are not property of the estate unless they arise out of the estate's property.

Judicial estoppel is not appropriate and would not apply since there is no federal mandate which requires the supplementation of asset schedules to include proceeds or product of the bankruptcy estate's property. Moreover, the debtor here kept the bankruptcy court abreast of his efforts to sell the property and in fact obtained bankruptcy court approval to sell the property at issue to Period Homes. After the sale fell through, he twice informed the court, albeit in an indirect manner, that a breach of contract claim possibly existed against Period Homes. Certainly he did not conceal any realized proceeds, such as cash. We decline to hold that Wallick successfully asserted a position in bankruptcy court that was contrary to that asserted later in state court.

The trial court erred in applying judicial estoppel to bar Wallick's claim against Period Homes. Summary judgment in favor of Period Homes is reversed.

2. Wallick contends that the trial court should have awarded him summary judgment on his complaint. Wallick argues that the evidence was undisputed that Period Homes failed to act in good faith in its efforts to obtain the governmental approvals and thus Period Homes's termination of the contract based on its inability to obtain those approvals within 30 days was unauthorized.

The contract provided that the agreement was "contingent upon Purchaser's ability to acquire all required licenses and permits from the appropriate governmental authority to build on the property." If Period Homes notified Wallick in writing within 30 days that it was unable to acquire all required licenses and permits, the contract would automatically terminate. Failure to provide such notice would waive the contingency by the purchaser.

Some evidence showed that during the 30-day period Period Homes's representatives met with officials from Fulton County to

---

[23] See 11 USC § 1306.

[24] See *Bell v. Bell*, 225 F3d 203, 217-218 (II) (C) (3) (2nd Cir. 2000); *Sandoval v. Sandoval*, 103 F3d 20, 22-23 (II) (B) (5th Cir. 1997); *In re Calder*, 973 F2d 862, 866 (II), n. 5 (10th Cir. 1992); *In re Williamson*, 804 F2d 1355, 1360 (IV) (B) (5th Cir. 1986); *Koch v. Myrvold*, 784 F2d 862, 863 (8th Cir. 1986); *In re Winom Tool & Die*, 173 Bankr. 613, 623-624 (E.D. Mich. 1994); *In re Doemling*, 127 Bankr. 954, 956, n. 1 (W.D. Pa. 1991); *In re Whitman*, 106 Bankr. 654, 657-658 (S.D. Cal. 1989); *In re Fleet*, 53 Bankr. 833, 838 (A) (E.D. Pa. 1985).

discuss rezoning issues and that the representatives contacted the Atlanta Regional Commission and the Army Corps of Engineers regarding needed approvals. Period Homes determined that it could not obtain the required permits within the allotted time and so informed Wallick orally, seeking an extension of time. When Wallick refused the extension, Period Homes immediately sent a written notice terminating the contract, although the reason for the termination was not specified in the notice.

The question of whether these were genuine good faith efforts to meet the governmental approval contingency in the contract is a question of fact for the jury to resolve at trial, as opposed to the court on summary judgment.[25] The court correctly denied summary judgment on these grounds.

3. Wallick also claims that summary judgment in his favor was required in that the written notice of termination was insufficient as a matter of law to invoke the contingency clause. Wallick points out that Period Homes's notice did not specify the lack of governmental approvals as the reasons for the termination and that therefore Period Homes waived the contingency.

It is true that the contract contemplated that the written notice would set forth that Period Homes was unable to acquire needed governmental approvals. Substantial compliance with notice provisions, however, may suffice so long as the contemplated information is communicated.[26] Thus, we hold that a jury could find that the oral conversation immediately before sending the notice, in which conversation the representative of Period Homes specified Period Homes's inability to acquire the licenses and permits, sufficiently informed Wallick of the basis for the notice. The court correctly denied summary judgment on this issue.

*Judgment affirmed in part and reversed in part. Andrews, P. J., and Eldridge, J., concur.*

DECIDED OCTOBER 30, 2001 — 

*Freed & Bermen, Robert H. McKnight,* for appellant.
*Gray & Gilliland, Charles A. Ratz, Self, Glaser & Davis, Mark B. Bullman,* for appellee.

---

[25] See *Re/Max Executives v. Vacalis,* 234 Ga. App. 659, 661 (2) (507 SE2d 235) (1998); *Century 21 Mary Carr &c. v. Jones,* 204 Ga. App. 96, 97 (418 SE2d 435) (1992); *Smithloff v. Benson,* 173 Ga. App. 870, 873 (1) (328 SE2d 759) (1985).
[26] *AHC Physicians Corp. v. Dulock,* 233 Ga. App. 634, 635-636 (504 SE2d 464) (1998).