# IN THE COURT OF APPEALS OF IOWA

No. 15-1420
Filed December 21, 2016

**PRO COMMERCIAL LLC,**
 Plaintiff-Appellee,

**vs.**

**MALLORY FIRE PROTECTION SERVICES, INC., AND WESTERN SURETY COMPANY,**
 Defendants-Appellants.

_____

 Appeal from the Iowa District Court for Story County, Timothy J. Finn, Judge.


 Defendants appeal the trial court's judgment in this breach of contract action. **AFFIRMED.**



 Jesse Linebaugh and Angela Morales of Faegre Baker Daniels LLP, Des Moines, for appellants.

 Brenton D. Soderstrum of Brown, Winick, Graves, Gross, Baskerville & Schoenebaum, P.L.C., Des Moines, for appellee.



 Heard by Vogel, P.J., and Vaitheswaran and McDonald, JJ.

**MCDONALD, Judge.**

This matter arises out of a construction contract dispute. The matter was tried to the district court. The district court found defendant subcontractor, Mallory Fire Protection Services, Inc. (Mallory), breached its contract with plaintiff general contractor, Pro Commercial, LLC (Pro Commercial). The district court found Pro Commercial suffered $262,105.36 in damages and entered judgment accordingly. On appeal, Mallory contends Pro Commercial failed to prove its damages were reasonable, the trial court erred in not requiring the replacement subcontractor to testify as to its hourly rates, Pro Commercial failed to mitigate its damages properly, and Pro Commercial failed to provide the pre-termination notice required under their subcontract agreements.

I.

These parties disagree on the applicable standard of review. The matter was tried at law. *See* Iowa R. App. P. 6.904(3)(a). Generally, our review would be for the correction of legal error. *See* Iowa R. App. P. 6.907; *NevadaCare, Inc. v. Dep't of Human Servs.*, 783 N.W.2d 459, 465 (Iowa 2010); *EnviroGas, L.P. v. Cedar Rapids/Linn Cty. Solid Waste Agency*, 641 N.W.2d 776, 780 (Iowa 2002). Under this standard, the district court's findings of fact "shall have the effect of a special verdict." Iowa R. App. P. 6.907. The district court's findings of fact are binding if supported by substantial evidence. *See Land O'Lakes, Inc. v. Hanig*, 610 N.W.2d 518, 522 (Iowa 2000); *Van Oort Constr. Co. v. Nuckoll's Concrete Serv., Inc.*, 599 N.W.2d 684, 689 (Iowa 1999). Evidence is substantial "when a reasonable mind would accept it as adequate to reach a conclusion." *Falczynski v. Amoco Oil Co.*, 533 N.W.2d 226, 230 (Iowa 1995). Evidence is viewed in a

light most favorable to the trial court's judgment. *See Van Oort Constr.*, 599 N.W.2d at 689; *Arbie Mineral Feed Co. v. Nissen*, 179 N.W.2d 593, 595 (Iowa 1970) ("We do not weigh the evidence; we only decide if there is a proper basis upon which the trial court could find as it did."); *Grall v. Meyer*, 173 N.W.2d 61, 63 (Iowa 1969) ("[W]e construe the evidence broadly to uphold, rather than defeat, the trial court's judgment."). Evidence is not insubstantial "merely because [the court] may draw different conclusions from it; the ultimate question is whether it supports the finding actually made, not whether the evidence would support a different finding." *Raper v. State*, 688 N.W.2d 29, 36 (Iowa 2004); *see Portzen Constr., Inc. v. Cal-Co Insulation, Inc.*, No. 13-0758, 2014 WL 2347821, at *4 (Iowa Ct. App. May 29, 2014) ("Our role as the reviewing court is not, however, to dissect the record anew to reach our own factual findings.").

Mallory contends a less deferential standard of review is required here. The district court adopted Pro Commercial's proposed findings and conclusions verbatim, Mallory argues. *See NevadaCare*, 783 N.W.2d at 465 ("We have recognized counsels' submission of proposed findings of fact and conclusions of law can be extremely valuable in assisting the district court, especially in highly technical or complicated cases. Nonetheless, we have criticized the practice of a district court's verbatim adoption of the proposed findings of fact and conclusions of law prepared by a prevailing attorney because 'the decision on review reflects the findings of the prevailing litigant rather than the court's own scrutiny of the evidence and articulation of controlling legal principles.'" (citations omitted)). Our comparison of the district court's order with Pro Commercial's proposed findings and conclusions shows the district court did not adopt Pro Commercial's posttrial

filing verbatim. Instead, the district court's findings and conclusions used some of Pro Commercial's proposed language but made significant and material changes, changes which demonstrate the exercise of independent judgment. We thus reject Mallory's contention that less deferential review should be applied here.

II.

In 2013, Iowa State University (ISU) solicited bids for installation of a fire sprinkler system in one of its dormitories, Friley Hall. Pro Commercial submitted the low bid on the project. This bid included a bid from Mallory as subcontractor. ISU accepted the bid.

The project was split in two phases: 1A and 1B. Because ISU wanted the dormitory to be available to students when classes commenced, the ISU-Pro Commercial agreement included strict completion deadlines, which were enforced by a $100 per day per room liquidated damages clause, a total of $20,200 for every day Pro Commercial was late.

ISU required Pro Commercial to post a performance bond. In turn, Pro Commercial's bonding company required Pro Commercial to obtain a bond from Mallory. Mallory had bonding limitations at $250,000. To meet those requirements, Pro Commercial and Mallory entered into three separate subcontract agreements: (1) a $250,000 Phase 1A labor subcontract; (2) a $250,000 Phase 1B labor subcontract; and (3) a $515,000 Phase 1A and 1B subcontract covering costs of materials and bonding. Mallory obtained bonds from Western Surety Company; Pro Commercial was named the obligee.

Under the Pro Commercial-Mallory subcontract agreements, Mallory was to submit payment applications. Pro Commercial was to pay Mallory once it had been paid by ISU. Pro Commercial could terminate Mallory if the subcontractor became insolvent, failed to supply sufficiently skilled workers, or failed to meet its contractual obligations. If terminated, Mallory was entitled to payment after the work was completed as long as the unpaid balance exceeded replacement costs.

The district court found Mallory started falling behind from the outset. As a result, the project began to fall further and further behind. ISU and Pro Commercial were dissatisfied with the number of workers Mallory had on the job and the hours worked. Mallory promised Pro Commercial and ISU it would increase the number of workers, but Mallory never did. The more the project fell behind, the more Pro Commercial became concerned ISU would enforce the liquidated damages clause. In April 2013, Pro Commercial contacted RNL Services (RNL) to inquire whether RNL would be able to complete the job if Mallory failed to get back on schedule. RNL told Pro Commercial it would be able to complete the job on time. Pro Commercial decided to allow Mallory to try to get back on schedule.

Pro Commercial sent Mallory an email on April 23, 2013, expressing its frustration with Mallory's performance and telling Mallory to consider the email the first notice of noncompliance. Despite the warning, the project continued to fall further behind schedule. On May 16, 2013, Pro Commercial sent Mallory a second email notifying Mallory that Pro Commercial would terminate the agreement if Mallory was not able to get back on schedule. Around this time,

ISU encouraged Pro Commercial to change subcontractors, and Pro Commercial renewed its discussions with RNL.

On May 23, Mallory informed Pro Commercial that Mallory was in a distressed financial position. Mallory argued it was owed money on the project. Pro Commercial claimed no money was due because ISU had not yet paid for work on the project. Mallory told Pro Commercial that if it was not paid now, Mallory would not be able to pay its workers. Mallory asked if Pro Commercial would advance this expense. Pro Commercial told Mallory it would consider it, but on May 28, Pro Commercial declined the request. Mallory's attorney called Pro Commercial the next day and left a voicemail message. Mallory's attorney stated if Pro Commercial would not pay Mallory on the project or bankroll its employees, Mallory would no longer supply workers and its last day would be the end of the week. Mallory's attorney told Pro Commercial it should do what Pro Commercial had to do. Pro Commercial shared this voicemail with ISU's construction manager.

At this point, the project was at least ten weeks behind schedule. Pro Commercial hired RNL to complete the project. The district court found Pro Commercial hired RNL to finish Phase 1A for $525,000. RNL was able to get the project nearly caught back up. Because of this, ISU did not seek liquidated damages.

Pro Commercial thereafter filed a suit against Mallory for breach of the subcontract agreements. Pro Commercial contended it was supposed to pay Mallory $765,000 for the completion of Phase 1A. Pro Commercial argued, in the end, its total costs for Phase 1A were $1,027,105.36 and therefore it suffered

$262,105.36 in damages. The district court found these damages reasonable and entered judgment accordingly. In the alternative, the court ordered Western Surety to pay on the bond. Mallory timely filed this appeal.

III.

A.

We begin with general principles of contract law. A breach of contract occurs when a party, "without legal excuse . . . fails to perform any promise which forms a whole or a part of the contract." *Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998). To prevail on such a claim, the party must show:

> (1) [T]he existence of a contract, (2) the terms and conditions of the contract, (3) that [plaintiff] has performed all the terms and conditions required under the contract, (4) the defendant's breach of the contract in some particular way, and (5) that plaintiff has suffered damages as a result of defendant's breach.

*Royal Indem. Co. v. Factory Mut. Ins. Co.*, 786 N.W.2d 839, 846 (Iowa 2010) (citing *Molo Oil*, 758 N.W.2d at 224); *see* 25A C.J.S. *Damages* § 308.

"An essential element of a breach of contract claim is that the breach caused a party to incur damages." *NevadaCare*, 783 N.W.2d at 468. "The purpose of awarding damages in a breach of contract action is to place the injured party in the position it would have occupied if the contract had been performed." *Portzen Constr.*, 2014 WL 2347821, at *6. Damages are limited to those that were foreseeable or reasonably contemplated by the parties when they entered into the agreement. *See Kuehl v. Freeman Bros. Agency, Inc.*, 521 N.W.2d 714, 718 (Iowa 1994). The burden of proving damages is on the party seeking them. *See Royal Indem.*, 786 N.W.2d at 847; *Data Documents, Inc. v.*

*Pottawattamie Cty.*, 604 N.W.2d 611, 616 (Iowa 2000). In construction cases, if a subcontractor breaches, a general contractor is "entitled to recover the damages it incurred to complete the contract following [the subcontractor's] discharge from the project to the extent that completion costs exceed the unpaid balance of the contract price." *Portzen Const.*, 2014 WL 2347821, at *6; *see Lewis Elec. Co. v. Miller*, 791 N.W.2d 691, 695 (Iowa 2010); *Bruner & O'Connor on Construction Law* § 19:78 (2016) ("The damage measure is the reasonable cost to complete the contract in conformance with its terms, less unpaid contract funds.").

The plaintiff must establish a reasonable basis from which damages can be ascertained; it cannot be too uncertain or speculative. *See Data Documents*, 604 N.W.2d at 616; *Natkin & Co. v. R.F. Ball Constr. Co.*, 123 N.W.2d 415, 422 (Iowa 1963). But the amount of damages need not be proven to a mathematical certainty. *Data Documents*, 604 N.W.2d at 616. There only needs to be "sufficient evidence to allow the factfinder to make an approximate estimate of the loss." *Id.* at 617. "[I]f the uncertainty lies only in the amount of damages, recovery may be had if there is proof of reasonable basis from which the amount may be inferred." *Natkin & Co.*, 123 N.W.2d at 422; *see Patterson v. Patterson's Estate*, 189 N.W.2d 601, 605 (Iowa 1971); *Orkin Exterminating Co. v. Burnett*, 160 N.W.2d 427, 430 (Iowa 1968); 25A C.J.S. *Damages* § 371 ("A nonbreaching party need only provide a stable foundation for a reasonable estimate of damages."). A plaintiff's failure to provide written evidence of its damages in a breach of contract case is not fatal to its claim. *See Samann L.C. v. Victory Lodging, Inc.*, No. 09-1160, 2010 WL 1375186, at *4 (Iowa Ct. App. Apr. 8,

2010). Damages can be established in part or in whole by witness testimony. *See id.* at *4–5. "[W]hether [a witness's testimony] was credible evidence [of damages] is best left to the trial judge who was in the best position to judge the credibility and make the judgment call as to whether the damages were sustained by the evidence, and if they were, what the damages were worth." *Id.* at *5.

B.

Mallory contends Pro Commercial failed to establish damages. Specifically, Mallory argues Pro Commercial failed to prove RNL's completion costs were reasonable and failed to provide documentation regarding the average hourly rate charged by RNL. We review the evidence in the light most favorable to the district court's decision. *See Van Oort Constr.*, 599 N.W.2d at 689.

There is substantial evidence in support of the district court's findings. Pro Commercial included Mallory's bid in its bid for the Friley project. Pro Commercial's final bid for the project was $1,843,547, which included all materials, suppliers, and subcontractors. Pro Commercial's bid was the lowest, and not by any meaningless sum. Pro Commercial's bid was about $500,000 lower than the next lowest bid and about $1.1 million lower than the bid estimate. According to ISU's construction manager, when soliciting for bids: "[W]hat you want is a nice tight group where all the numbers are about the same number. Then you know that the documents are understandable and that everybody interpreted them the same, and you've got a representative—a good competitive number." Pro Commercial's bid raised red flags for ISU. Representatives from

ISU met with Pro Commercial and Mallory, concerned that Mallory and Pro Commercial may have underestimated the cost of the project. Mallory informed Pro Commercial it was comfortable with its bid. When RNL eventually came onto the project, the final contractual price Pro Commercial and RNL agreed to was $525,000 for Phase 1A , including labor and materials.[1] This amount was much closer to the "nice tight group" of other bidders on the project, which others in the industry apparently believed to be a reasonable cost to do the project.

The looming liquidated damages clause also supports the reasonableness of Pro Commercial's damages. Mallory began working on the Friley project on March 18, 2013. The Pro Commercial-Mallory subagreements were terminated on May 31, 2013. At that time, the project was at least ten to twelve weeks behind schedule. Under the ISU-Pro Commercial agreement, the first of the rooms had to be habitable by July 26, 2013. If the rooms were not habitable, Pro Commercial faced liquidated damages in the amount of $20,200 per day until project completion. Before the Pro Commercial-Mallory subagreement was terminated, ISU was contacting Pro Commercial weekly about Mallory being behind. Once Mallory was off the project, ISU was very concerned about whether the project was going to get done. Pro Commercial was very concerned the liquidated damages clause would be enforced. Pro Commercial did not have time to solicit bids from other subcontractors. So Pro Commercial turned to RNL. Pro Commercial had had satisfactory experiences with RNL in the past, and RNL was familiar with the project. The final Pro Commercial-RNL contract price

---

[1] The $250,000 subagreement price for Phase 1A between Pro Commercial and RNL only included labor. Material and costs were contemplated in the separate $515,000 subagreement between the parties.

included remedial work, including groove-cutting piping, change orders, increased crew sizes, and overtime in order to get the project up to date. Pro Commercial made sure to have the costs of the change orders included in the $525,000, rather than having them be added on top, thus keeping the costs lower.

Mallory contends the damages award is not reasonable because RNL failed to provide information regarding the hourly rate of its laborers. Rusty Crabtree, RNL's owner, refused to answer this question at trial because the project was paid for on a lump-sum basis and because he was fearful the information would reveal confidential information that could be used against RNL (RNL is not a union company). We cannot conclude the lack of this testimony undermines the district court's findings regarding damages. The reasonableness of the damages was verified through other sources.

C.

Mallory argues Pro Commercial failed to comply with the pre-termination provision of the parties' subagreements. Under the parties' subagreements, Pro Commercial was required to provide Mallory written notice two days prior to terminating the subagreements. Mallory contends Pro Commercial failed to do this and thus improperly terminated the subagreements. The standard of review is for correction of errors at law. *See* Iowa R. App. P. 6.907; *NevadaCare*, 783 N.W.2d at 465.

The purpose of pre-termination notice is to allow the breaching party the chance to cure. *See Cedar Rapids Television Co. v. MCC Iowa LLC*, 524 F. Supp. 2d 1127, 1136 (N.D. Iowa 2007) (applying Iowa law and stating the

purpose of pre-termination notice is to allow the notified party the chance to contemplate and prepare for the action); *AHC Physicians Corp. v. Dulock*, 504 S.E.2d 464, 465 (Ga. Ct. App. 1998) (stating the purpose of notice requirements is to "notify [a party] of a breach and give him opportunity to cure it"); 58 Am. Jur. 2d *Notice* § 2 ("The principal purpose of notice is to alert a party to the nature and substance of the action against the party."); *Bruner & O'Connor on Construction Law* § 18:41. "The nature of notice required by contract depends on the provisions of the contract." 58 Am. Jur. 2d *Notice* § 11. "Notice of termination must be 'clear, definite, unambiguous and unequivocal, and it properly may not be so characterized unless its meaning can be apprehended without explanation or argument' in order to be effective." *Cedar Rapids Television Co.*, 524 F. Supp. 2d at 1136 (citations omitted).

Here, after the project continued to fall further and further behind, Pro Commercial sent Mallory two emails. The first email was sent April 23, 2013. It discussed Pro Commercial's dissatisfaction with Mallory's performance and the number of workers Mallory had on the job. As relevant here, it stated:

> Consider this email your notice of 'Non-Compliance with your contract' and you have 48 hours, 2 days, to man the project with at least 8 men until school is out and then 2 crews of at least 8 men per crew. If you do not man the job per this email, with this as the minimum manpower required, we will contact another fire sprinkler company to take over your job and will pay them whatever their cost is to complete the job (See Section 11 of your contract).

Pro Commercial allowed Mallory to continue working after it sent this email. Then on May 16, 2013, Pro Commercial sent the second email. Steve Aldred, Pro Commercial's owner, wrote in part, "But again, you are in violation of your contract a second time. . . . If you cannot follow your contractual rules let me

know now. I will contact your bond company and put them on notice as to the state of your contract."

These emails complied with the notice provision of the parties' subagreements. They were in writing. The language of the emails was "clear, definite, unambiguous and unequivocal" and plainly informed Mallory what would happen if Mallory was not able to cure. *Id.* The emails were sent at least two days prior to termination. The fact Pro Commercial did not terminate the contract within the immediate two days after notice is not material to the issue. *See AHC Physicians Corp.*, 504 S.E.2d at 465–66 (noting plaintiff was served thirty-days' notice in April urging the plaintiff to become compliant with the contract or else he would be terminated but was not terminated until June).

Pro Commercial's emails also substantially complied with the spirit and purpose of the notice provisions. *See Gray v. Bicknell*, 86 F.3d 1472, 1479 (8th Cir. 1996) (the fact that the notified party could "construct a clearer notice of breach by adding the words 'breach' and 'termination' to [the notifying party's] letter does not mean that [notifying party's] letter [was] inadequate" because notice of a breach need not "be the clearest statement possible" to be effective); *Kiewit Offshore Servs., Ltd. v. Dresser-Rand Global Servs., Inc.*, No. CIVIL ACTION H-15-1299, 2016 WL 4564472, at *6 (S.D. Tex. Sept. 1, 2016) ("The doctrine of substantial compliance is applicable to contractual notice provisions." (citing *S. Tex. Elec. Co-Op v. Dresser-Rand Co.*, 575 F.3d 504, 507 (5th Cir. 2009))); *Andrews v. Victor Metal Prods. Corp.*, 411 S.W.2d 515, 518 (Ark. 1967) (finding the defendant employer substantially complied with the notice provision and therefore the plaintiff employee was not prejudiced); *Wallick v. Period*

*Homes, Ltd.*, 555 S.E.2d 863, 868 (Ga. Ct. App. 2001) ("Substantial compliance with notice provisions, however, may suffice so long as the contemplated information is communicated."); *AHC Physicians Corp.*, 504 S.E.2d at 465–66 (finding that although the first notice provided by the plaintiff's employer "may not have stated in so many words that [the plaintiff] had breached his employment agreement, they were more than mere criticisms of his performance" and it plainly stated plaintiff needed to cure, and the employer's second notice plainly stated if plaintiff did not become compliant, he would be terminated); *see also Met-Coil Sys. Corp. v. Columbia Cas. Co.*, 524 N.W.2d 650, 654 (Iowa 1994) (finding, in insurances cases, substantial compliance with notice provisions are required); *Prior v. Schmeiser*, 69 N.W. 525, 526 (Iowa 1896) (stating that in breach of contract cases, a party does not need to prove perfect performance, only that it substantially performed); *Des Moines & Denver Land & Tree Co. v. Polk Cty. Homestead & Trust Co.*, 45 N.W. 773, 774–75 (Iowa 1890) (stating a party in a breach of contract case need only prove it substantially performed, which is determined by the finder of fact on a case-by-case basis). The notice provisions were meant to allow Mallory the chance to cure. Pro Commercial gave Mallory two chances to become compliant, each time informing Mallory in plain and unambiguous terms what would happen if Mallory did not.

Even if the notices failed to comply strictly or substantially with the parties' agreement, Mallory's argument fails. Mallory was not ready, willing, and able to remedy the breach. Mallory's attorney called Pro Commercial and stated because Pro Commercial had not agreed to bankroll Mallory's labor payroll, Mallory "would not be able to supply men for the project any longer and Friday

[May 31] would be their last day," and Pro Commercial would "need to do what [it] need[ed] to do." It is clear Mallory was no longer going to have workers on the site. If Mallory was not going to work, then they would not be able to get the project back up to schedule and therefore cure the breach. Providing notice under these circumstances would have been an exercise in futility.

D.

Mallory raises another issue related to damages. Mallory contends Pro Commercial and RNL backdated their agreement, demonstrating fraudulent intent and the unreliability of the evidence establishing damages. Our review is for correction of errors at law. *See* Iowa R. App. P. 6.907.

To avoid liquidated damages, Pro Commercial had RNL commence work on the project in early June. At that moment, time was of the essence, and the two had only an oral agreement regarding the project. Pro Commercial and RNL continued to work under the oral agreement for months. When Pro Commercial and RNL finalized the contract in September 2013, they backdated it to June 6, 2013, the time work commenced. The backdating appears merely to memorialize when RNL and Pro Commercial first came to oral agreement. Oral agreements can later be memorialized into written agreements. *See Emp. Benefits Plus, Inc. v. Des Moines Gen. Hosp.*, 535 N.W.2d 149, 153–54 (Iowa Ct. App. 1995) ("An oral contract may exist even though the parties intended to reduce it to writing at a later date. If the oral agreement is complete as to its terms and has been finally agreed to, it will generally be enforceable. Under these circumstances, the writing is merely an expression of a previously completed contract." (citations omitted)). A memorialization such as this relates

back because it reflects the parties' intent to have an agreement from the earlier date. *See In re Alcom Am. Corp.*, 156 B.R. 873, 879 (Bankr. D.D.C. 1993) (finding a formal security agreement executed in December but backdated to August of that year should relate back because "it reflects [the parties to the security agreement's] intent, manifested in back-dating the formal security agreement, to memorialize their August 1983 agreement to provide for a security interest"); *Lyon v. Reames Foods, Inc.*, Civ. A. No. 90-2447-Z, 1992 WL 101649, at *4–5 (D. Kan. Apr. 16, 1992) (applying Iowa substantive law, the court found an oral agreement entered into by the parties and later reduced to writing and backdated to when the oral agreement was entered into was a valid contract and the backdating was memorializing the oral agreement); *In re Owensboro Canning Co.*, 82 B.R. 450, 456 (W.D. Ky. 1988) (finding a valid and enforceable security interest where the formal security agreement was backdated to relate back to an earlier agreement already in existence); *Schwartz v. Houss*, No. 21741/04, 2005 WL 579152, at *3 (N.Y. Sup. Ct. Jan. 3, 2005) ("A writing memorializing an oral agreement need not be made contemporaneously with that oral agreement."). Like the district court, we conclude there is no issue here.

## E.

Finally, Mallory contends Pro Commercial failed to mitigate its damages. Our review is for correction of errors at law. *See* Iowa R. App. P. 6.907. While the plaintiff in a breach of contract case has a duty to be reasonably diligent in mitigating its damages, *see Kuehl*, 521 N.W.2d at 719, the burden is on the defendant to show the plaintiff failed in this duty. *See Hunter v. Bd. of Trs. of Broadlawns Med. Ctr.*, 481 N.W.2d 510, 517 (Iowa 1992); *R.E.T. Corp. v. Frank*

*Paxton Co.*, 329 N.W.2d 416, 422 (Iowa 1983). "Generally, a party who has been wronged by a breach of contract may not unreasonably remain idle and allow damages to accumulate but must attempt to minimize damages." 22 Am. Jur.2d *Damages* § 361. "A finding that cheaper or more effective options than the ones chosen were available to plaintiff would not necessary negate a finding that plaintiffs, in selecting the option pursued, were faithful to their obligation of reasonable diligence." *Bushman v. Cuckler Bldg. Sys.*, 421 N.W.2d 145, 149 (Iowa Ct. App. 1988), *rejected on other grounds by Chiafos v. Mun. Fire & Police Ret. Sys. of Iowa*, 591 N.W.2d 199, 203 (Iowa 1999); *see Waters v. Wolfe*, No. 07-0619, 2008 WL 238617, at *4 (Iowa Ct. App. Jan. 30, 2008) (holding "[t]he fact other options are available does not negate a finding" that a party was "faithful to their obligation of reasonable diligence" and an opposing party "cannot use hindsight to argue the methods used . . . were not the most effective"). Pro Commercial did not fail to mitigate its damages. By employing RNL quickly, Pro Commercial avoided paying liquidated damages to ISU or additional overtime to RNL to get caught up after falling even further behind. Pro Commercial did not sit idly by and allow damages to pile up. *See* 22 Am. Jur. 2d *Damages* § 361. We find no error.

IV.

For the foregoing reasons, we affirm the judgment of the district court.

**AFFIRMED.**