A97A0329. DOUBLETREE, INC. et al. v. SCHANLEY et al.
(487 SE2d 506)

BEASLEY, Judge.

Defendants Doubletree and DT Management (collectively "Doubletree") appeal from the $45,000 judgment entered on the jury's verdict in this premises liability case, contending the court erred in denying their motion for directed verdict.

" 'A directed verdict is proper only "(i)f there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict(.)" OCGA § 9-11-50 (a).' [Cit.] 'In determining whether any con-

flict in the evidence exists, the court must construe the evidence most favorably to the party opposing the motion for directed verdict. The standard used to review the grant or denial of a directed verdict is the "any evidence" test. (Cit.)' [Cit.]" *Grubb v. Woodglenn Properties,* 220 Ga. App. 902, 903 (1) (470 SE2d 455) (1996).

Schanley, a chef, went to Doubletree's hotel to attend a seminar on carving ice sculptures and was a registered guest of the hotel. The seminar, which began about 8:00 a.m. with demonstrations of ice cutting, was held at the hotel's loading dock, and Schanley arrived there about 7:45. Around 11:00 the seminar participants set up individual work stations to do their own ice sculptures.

Schanley placed his work station six to eight feet away from the end of a row of stored, unused ice blocks. The blocks were four and one-half feet tall and weighed four hundred pounds each. As Schanley was working on his sculpture at about 11:30, one of the blocks three or four rows back fell, creating a domino effect that knocked over the last block, breaking Schanley's ankle.

The loading dock was not refrigerated and the proper method of storing ice blocks would have been to place each on a wooden pallet to help prevent it from moving, but these blocks were not so stored. A safe distance to work from such a block of ice was the height of the block plus two or three feet. The hotel's executive chef affirmed the location to a local professional organization for its seminar. The instructor was not an employee of Doubletree. The chef was not aware of any safety precautions or inspections taken by the hotel, even though he knew that ice blocks could become unstable after sitting for hours on the concrete floor. He was present when the ice delivery was made but did not supervise the unloading or instruct any hotel employees to ensure its safety. During the seminar Schanley saw some hotel employees, but none inspected the ice blocks.

Doubletree does not dispute that it had a nondelegable obligation to keep its premises safe, see OCGA § 51-3-1, but contends there was no evidence it had any knowledge of the danger superior to Schanley's own. " ' " 'The true ground of liability is the proprietor's *superior knowledge* of the perilous instrumentality and the danger therefrom to persons going upon the property. It is when the perilous instrumentality is *known to the owner . . .* and *not known to the person injured* that a recovery is permitted.' (Emphasis in original.) (Cit.)" (Cit.)' [Cit.]" *Westbrook v. M & M Supermarkets,* 203 Ga. App. 345 (1) (416 SE2d 857) (1992).

Without dispute Doubletree had no actual knowledge that one of the blocks had melted so as to be unstable, which created the danger of the collapse that produced Schanley's injury. However, " ' "[c]onstructive knowledge may be inferred where there is evidence

that an employee of the owner was in the immediate vicinity of the dangerous condition and could easily have noticed and removed the hazard. (Cit.) Liability based on constructive knowledge may also be established by showing that the owner failed to exercise reasonable care in inspecting the premises, but recovery under that approach requires proof of the length of time the dangerous condition was allowed to exist. (Cits.)" (Cit.)' [Cit.]" (Emphasis omitted.) *Thompson v. Regency Mall Assoc.*, 209 Ga. App. 1, 3 (1) (432 SE2d 230) (1993).

Although the employees in the loading dock area did not go among the block rows where the dangerous condition might have been noticed, there was evidence the blocks were stored in an unsafe manner for several hours and Doubletree made no inspection of them during those hours. This was sufficient to allow the jury to infer that Doubletree had constructive knowledge of the dangerous condition.

Doubletree argues that even if it had constructive knowledge, Schanley had knowledge at least equal to Doubletree's. Schanley testified he did not have the opportunity to make any inspection of the rows of blocks. Although he testified he was aware of puddles of water in the area of the loading dock including his work station, he did not go into the rows and did not inspect the blocks there, and he did not know if puddles were from melting blocks or carving debris. Doubletree contends Schanley admitted an inspection by a hotel employee would not have revealed any dangerous condition, but Schanley's testimony actually was that an inspection of his work station would not have revealed any dangerous condition. His only testimony about the area where the first block of ice fell was that neither he nor any hotel employee inspected it. The manner of storage and condition of the ice blocks, not the water puddles, is what caused the danger.

The jury could conclude that Doubletree's constructive knowledge resulting from the failure to inspect the premises was superior to Schanley's knowledge. It was not error to deny the motion for directed verdict.

*Judgment affirmed. McMurray, P. J., and Smith, J., concur.*

DECIDED JUNE 11, 1997.
Before Judge Brogdon.
*Shivers & Associates, Wayne C. Wilson*, for appellants.
*Jonathan P. Sexton*, for appellees.