A98A1565. RE/MAX EXECUTIVES, INC. v. VACALIS et al.
(507 SE2d 235)

BLACKBURN, Judge.

Re/Max Executives, Inc. appeals the trial court's denial of its motion for summary judgment, contending that DeMetri and Dena Vacalis, as purchasers, breached their contractual obligation to pursue and obtain financing for the subject real property, and thereby preventing the closing of the sale. As a jury question remains as to

whether the Vacalises diligently pursued their financing obligations under the contract, we affirm.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant [or denial] of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

1. The record shows that the Vacalises, as buyers, executed a purchase and sale agreement contingent upon them obtaining financing. Paragraph 2 (1) of the sales agreement provides that the Vacalises' obligation to close the transaction was contingent upon their ability to obtain a loan in the amount of 80 percent of the $330,000 purchase price (i.e., $264,000), with an interest rate not greater than 8.25 percent. Paragraph 2 (7) of the agreement, required purchasers to also close the sale if they selected alternative financing. It provides that: "Buyer shall be obligated to close this transaction if Buyer has the ability to obtain a loan with terms as described herein and/or any other loan for which buyer has applied and been approved." The contract further provides that purchasers will be liable to Re/Max for its commission if purchaser's breach of the contract prevents the closing thereof.

On or about September 26, 1996, the Vacalises applied to Sun America Mortgage, Inc. for a loan. Mr. Vacalis testified that his intention was to apply for a $264,000 loan which would satisfy the primary financing contingency of the agreement. Vacalis further testified that he signed the application for this loan in blank, pursuant to Sun America's request, and that Sun America later completed the application to reflect a request for $200,000 without informing him and against his instructions. On or about October 1, 1996, Vacalis terminated his dealings with Sun America in writing, stating: "The main reason in my decision to transfer my application file is your unwillingness to factor in my moral and ethical monetary support obligation to take care of my ill parents and to ensure that my son receives a quality college education." Thereafter, the Vacalises unsuccessfully applied for a loan with another institution to which Sun America transferred their file.

Sun America disputes the Vacalises' version of the loan application process. According to Ted Harrison, Sun America's Executive Vice President, the Vacalises applied for a $200,000 loan at an interest rate of 7.875 percent. Harrison further testified that Sun America would have approved this loan application. Furthermore, we note that Syd Howel, a senior loan officer at Sun America, testified that the Vacalises signed a fully completed loan application in her pres-

ence for a loan in the amount of $200,000. Howel further indicated that, had the Vacalises applied for a $264,000 loan, they would have qualified therefor. However, Howel's affidavits were filed after the trial court entered its order in this case, and, as such, these affidavits could not have been considered by the trial judge in rendering his decision.

2. "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement. In the specific context of a financing contingency in a real estate sales contract, for example, we have held that the purchaser has an implied duty to diligently seek to have the contingency take place, and that this implied duty must be exercised in good faith." (Citations and punctuation omitted.) *Century 21 Mary Carr & Assoc. v. Jones*, 204 Ga. App. 96, 97 (418 SE2d 435) (1992). Whether in the amount of $264,000 or $200,000 and whether pursuant to paragraph 2 (1) or 2 (7) of the sales agreement, it is undisputed that the Vacalises filed a loan application with Sun America which they unilaterally terminated because Sun America refused to consider speculative obligations which the Vacalises might incur in the future. It is also undisputed that Sun America would have approved this application if it had not been withdrawn. In light of these facts, a jury must determine if the Vacalises acted diligently in attempting to satisfy their financing obligations under the sales contract. "Whether [the Vacalises'] actions were reasonable or exhibited the good faith or diligence implied in the contract was clearly a material issue of fact." Id. Accordingly, as issues of fact remain in this case, we affirm the trial court's denial of Re/Max's motion for summary judgment.

*Judgment affirmed. McMurray, P. J., and Eldridge, J., concur.*

DECIDED SEPTEMBER 22, 1998 —
RECONSIDERATIONS DENIED AND DISMISSED OCTOBER 7, 1998.

*Lefco & Blumenthal, Stanley M. Lefco*, for appellant.

*Wilson Law Firm, L. Matt Wilson, Anthony O. Lakes*, for appellees.

*Weissman, Nowack, Curry & Zaeleon, Seth G. Weissman, Frances R. Mathis*, amici curiae.