A03A1270. PATEL v. BURT DEVELOPMENT COMPANY.
(582 SE2d 495)

ELDRIDGE, Judge.

This is an appeal from an order of the Superior Court of Dougherty County directing a verdict in favor of plaintiff/appellee Burt Development Company ("Burt") on its complaint for damages based upon defendant/appellant Jayantital Patel's breach of contract to purchase the Heritage House hotel in downtown Albany. Upon the facts that follow, we reverse.

On May 5, 1997, Patel entered into a "Standard Commercial Sales Agreement" with Burt to purchase the Heritage House for $1,050,000. Under the specific terms of the contract contained in paragraph 21 thereof, Patel agreed,

> to purchase said property based upon receiving financing to purchase and renovate property. Purchaser [(Patel)] agrees to pursue said financing with due diligence and notify seller [(Burt)] by June 15, 1997 if purchaser is unable to obtain said financing.

The contract specified the closing date as June 30, 1997. It is undisputed that Patel failed either to give notice that he was unable to obtain financing by the required date or to close on June 30, 1997.

Approximately a week after the scheduled date for closing, Burt made contact with Patel. Patel asked for an "extension" of 45 days. Burt agreed to such extension upon the condition that Patel put up an additional $5,000 in earnest money. On July 17, 1997, the parties

---

[4] *White v. Arthur Enterprises,* 219 Ga. App. 124 (2) (464 SE2d 225) (1995).

met to sign an amendment to the original contract reflecting the extension agreement as follows:

> Seller has agreed that in consideration of the Purchaser depositing an additional Five Thousand and No/100 ($5,000) Dollars deposit (binder) to the Five Thousand and No/100 ($5,000) Dollars binder previously deposited to extend the time for the consummation of the subject Contract for a period of forty-five (45) days from July 21, 1997.

Except for the amendment, "all of the terms and conditions of said Contract shall remain in full force and effect." At the signing of the extension amendment, Burt insisted that the additional $5,000 escrow money be put into an escrow account maintained by Burt's realtor, Don Evans; this provision was handwritten into the amendment and initialed by Burt. Patel refused to agree to such provision and refused to initial the change in the amendment. Thereafter, Patel failed to put additional money into an escrow account or to close on the property. The Heritage House was subsequently sold to a third party for $850,000.

Burt filed suit. On the day of trial, Patel apparently faxed to the trial court a letter from his physician advising that Patel recently underwent back surgery and would be physically unable to attend the trial. The record shows that the trial court informed the jury of this fact; the court instructed the jury that Patel's deposition testimony would be read and that "[y]ou're not to make an inference harmful to Mr. Patel by virtue of the fact that he's not here and available." The record contains no objection to this procedure or any discussion with regard thereto. By deposition, Patel testified that he had received offers from at least two or three different financing institutions to lend him between $1.2 million and $3 million, but had decided not to follow through with such offers because the terms were unfavorable. He testified that he had been unable to obtain financing.

Following the close of evidence, the trial court directed a verdict for Burt, finding that, under the original May 5, 1997 contract, Patel's failure to obtain financing and to give notice of such failure constituted a breach:

> I believe by the terms of the May the 5th agreement that paragraph 21 is controlling by its own language. . . . He [(Patel)] has admitted on the record that he, in fact, did not obtain the financing, and also admitted on the record that he did not notify the other parties. Therefore, based on the law, then the contract becomes fully enforceable as written, in that he has failed to fulfill the terms of it. And the plain-

tiff is entitled to judgement as a matter of law on the issue of breach of contract.

The issue of money damages was submitted to the jury, which awarded Burt $100,000. *Held*:

1. Burt filed a motion to dismiss the instant appeal, claiming that Patel's notice of appeal was deficient per OCGA § 5-6-37 in that the notice did not contain "a concise statement of the judgment, ruling, or order entitling appellant to take an appeal."[1] However,

> [w]here it is apparent from the notice of appeal, the record, the enumeration of errors, or any combination of the foregoing, what judgment or judgments were appealed from, the appeal shall be considered in accordance therewith notwithstanding that the notice of appeal fails to specify definitely the judgment appealed from.[2]

Based upon the record, we find it apparent that the trial court's order directing a verdict for Burt is the "final judgment on the question of liability" from which Patel sought to appeal. Burt's motion to dismiss is denied.

2. Patel claims that the trial court erred in directing a verdict for Burt. We agree.

> A directed verdict is proper only if there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict. OCGA § 9-11-50 (a). In determining whether any conflict in the evidence exists, the court must construe the evidence most favorably to the party opposing the motion for directed verdict.[3]

Here, the trial court determined that, under the terms of the original May contract, Patel's failure to provide notice on June 15 that he could not obtain financing made the May contract "fully enforceable as written" and, thus, merited a directed verdict for Burt. However, the enforceability of the terms of the contract was contingent upon the condition precedent that Patel obtain financing. In that regard,

> The general view appears to be that a financing contingency clause creates a condition precedent to the performance of

---

[1] OCGA § 5-6-37.

[2] (Punctuation omitted.) *In re Burton*, 271 Ga. 491, 493 (1) (521 SE2d 568) (1999).

[3] (Citations and punctuation omitted.) *Doubletree, Inc. v. Schanley*, 226 Ga. App. 776-777 (487 SE2d 506) (1997).

the primary contractual obligations to buy and sell the property. Corbin categorizes it as a condition precedent and states: "To this treatise, it appears that there was a valid contract of purchase and sale, one term of which provided for the obtaining of the loan. . . . (I)t is reasonable to hold that the obtaining of the loan was a condition precedent to the duty of both parties to render their promised performances (and not a condition precedent to the existence of a valid contract)." 3A Corbin on Contracts, § 629A, fn. 22.15, p. 13 (1971 Supp.).[4]

Absent fulfillment of the condition precedent that he obtain financing, Patel's primary obligation under the sales agreement to purchase the Heritage House was not enforceable against him.[5] Clearly, then, Patel's failure to simply give notice that he was unable to obtain financing cannot render the May contract "fully enforceable as written" when the condition precedent to its enforceability was not met.[6]

The contract was not binding on the parties until [Patel] obtained a loan, for not until the occurrence of that event did the contract have mutuality. Since [Patel] did not satisfy the contingency of obtaining a loan by the closing date, the contract never became binding.[7]

Burt's reliance on cases involving notice provisions contained in contracts without financing contingencies is futile.[8] In each case cited by Burt, the contract was enforceable on its face, and the purchaser's failure to provide notice pursuant to the terms thereof did not effect the contract's enforceability. Here, the contract was not enforceable on its face because it was contingency based, and Patel's failure to honor a notice provision cannot render an otherwise unenforceable

---

[4] (Citations omitted.) *Brack v. Brownlee*, 246 Ga. 818, 822 (273 SE2d 390) (1981).

[5] See *Panfel v. Boyd*, 187 Ga. App. 639, 645 (3) (371 SE2d 222) (1988) (financing condition was condition precedent which could prevent enforcement of the contract).

[6] OCGA § 13-3-4.

[7] (Citations, punctuation and emphasis omitted.) *Covington v. Countryside Investment Co.*, 263 Ga. 125, 126 (1) (428 SE2d 562) (1993); compare *Brack v. Brownlee*, supra at 821, n. 3 (when buyer has obtained financing, *seller* cannot rescind bargained-for agreement because financing clause too vague and, thus, lacks mutuality: " 'Even if the terms of the loan to be obtained are vague and uncertain, if the buyer actually has the purchase price in cash to pay to the seller as required by the contract, it should not make any difference to the seller how the cash is obtained.' ").

[8] See, e.g., *Thornton v. Kumar*, 240 Ga. App. 897 (525 SE2d 735) (1999); *Clarkcraft, Inc. v. Dunaway*, 196 Ga. App. 13 (395 SE2d 241) (1990); *Atlanta Six Flags Partnership v. Hughes*, 191 Ga. App. 404 (381 SE2d 605) (1989).

contract capable of being enforced. The trial court's stated basis for directing a verdict for Burt was error as a matter of law.

Our analysis, however, does not end here. "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement."[9]

> In the specific context of a financing contingency in a real estate sales contract, for example, we have held that the purchaser has an implied duty to diligently seek to have the contingency take place, and that this implied duty must be exercised in good faith.[10]

In this case, such duty was made an express part of the sales agreement. Thus, while Patel's mere failure to obtain financing would not constitute a breach of contract, he was required to apply for a loan and pursue it diligently and in good faith.[11] If he did so, but still failed to obtain a loan, there was no breach of contract.[12] If he did not, a finding of breach of contract is authorized. Consequently, a directed verdict would still be permissible if the evidence of record unequivocally demonstrates that Patel failed to exercise good faith and due diligence in pursuing financing as required by the terms of the agreement. "If a judgment entered pursuant to the granting of a directed verdict is right for any reason, it will be affirmed."[13]

The record before us contains evidence that several lending institutions offered Patel the opportunity to obtain loans sufficient to meet his obligations under the contract. Patel testified that, for various reasons related to the terms and conditions imposed by the lenders, he turned down these opportunities. In that regard, the financing contingency clause in the sales agreement states only that Patel agreed to purchase the Heritage House "based upon receiving financing to purchase and renovate said property." Such broadly worded contingency clause, without specific financing terms, amounts, and conditions, allows for an issue of fact as to whether it was reasonable for Patel to refuse the financing offered by the lending institutions. Thus, "[w]hether [Patel's] actions were reasonable or exhibited the good faith or diligence implied in the contract was clearly a material issue of fact."[14] Such material issue of fact is not susceptible to a

---

[9] Restatement, Second, Contracts, § 231.

[10] (Citation and punctuation omitted.) *Century 21 Mary Carr & Assoc. v. Jones*, 204 Ga. App. 96, 97 (418 SE2d 435) (1992); accord *Re/Max Executives v. Vacalis*, 234 Ga. App. 659, 661 (2) (507 SE2d 235) (1998).

[11] *Covington v. Countryside Investment Co.*, supra at 127 (3).

[12] Id.

[13] (Citation omitted.) *Fowler v. Smith*, 230 Ga. App. 817, 821 (3) (498 SE2d 130) (1998).

[14] (Citation and punctuation omitted.) *Re/Max Executives v. Vacalis*, supra at 661 (2).

directed verdict.[15] Accordingly, we are constrained to conclude that a jury must determine if Patel acted reasonably and diligently in attempting to satisfy his financing obligations under the sales agreement. Reversal of the trial court's judgment and remand for retrial are required.

3. Patel also contends the trial court erred in denying his health-related motion for continuance, made on the day of trial. Patel's claims, however, rely entirely on documents and argument not contained in the record. Our review of the record shows no request for a continuance and no objection to proceeding on Patel's deposition. Factual assertions in briefs, not supported by evidence of record, cannot be considered in the appellate process.[16]

4. As a related issue which may arise on retrial, we find that the extension amendment to the May contract was invalid, since Patel did not accept the handwritten addition by Burt.[17] The modification of one or more terms of an offered amendment is of no legal effect as an acceptance thereof. It is a rejection of the offer, and a counteroffer in lieu of the original; all terms of the counteroffer must be accepted by the parties to the original offer in order to constitute an agreement.[18]

> In the instant [case], this issue is of doubtful significance. The original contract had expired by its own terms. The date for closing . . . had passed. . . . Thereafter, the [amendment] . . . was merely an attempt to revive a contract no longer in existence and such offer was ineffective unless accepted. [Burt's amendment counteroffer] was not accepted.[19]

*Judgment reversed and case remanded for additional proceedings not inconsistent with this opinion. Johnson, P. J., and Mikell, J., concur.*

DECIDED MAY 13, 2003 —
RECONSIDERATION DENIED JUNE 2, 2003 —

---

[15] *Reeb v. Daniels Lincoln-Mercury Co.*, 193 Ga. App. 817, 819 (1) (a) (389 SE2d 367) (1989) ("If there is any evidence creating a material issue of fact, a motion for a directed verdict cannot be granted. [Cits.]") (punctuation omitted); see OCGA § 9-11-50 (a).

[16] *Clifton v. Gillis*, 195 Ga. App. 712, 713 (1) (394 SE2d 582) (1990); see also *Slade v. State*, 267 Ga. 868, 869 (2) (485 SE2d 726) (1997).

[17] OCGA § 13-3-1.

[18] *Duval & Co. v. Malcom*, 233 Ga. 784, 787 (2) (214 SE2d 356) (1975).

[19] *Panfel v. Boyd*, supra at 646 (3).

*Farkas & Ledford, Leonard Farkas*, for appellant.
*Burt & Burt, Hilliard P. Burt*, for appellee.