### A10A1910. DESMEAR SYSTEMS, INC. v. VINES.
(700 SE2d 711)

BLACKBURN, Senior Appellate Judge.

In this action for real estate commissions, the potential buyer (Desmear Systems, Inc.) appeals the summary judgment awarding real estate commissions to a real estate broker (Jeff Vines), arguing that material issues of fact precluded summary judgment. Specifically, the buyer claims (i) that evidence undisputably showed the real estate contracts' financing contingencies were not met, and (ii) that no undisputable evidence showed that the reason for this failure was the buyer's lack of cash. We agree and reverse.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an

---

[13] *United States v. Jorn*, 400 U. S. 470, 485 (II) (91 SC 547, 27 LE2d 543) (1971).

appeal from a grant or denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. *Matjoulis v. Integon Gen. Ins. Corp.*[1]

So viewed, the evidence shows that two sets of sellers listed their neighboring commercial properties with the same broker.[2] The broker procured a buyer for the properties, and on June 15, 2003, the broker, the buyer, and the respective sets of sellers entered into two identical real estate sales contracts (with the exception of the prices, the names of the sellers, and the descriptions of the property to be sold). Each contract conditioned the agreement "upon Buyer's ability to obtain a loan (except if the loan is denied because Buyer lacks sufficient cash to close excluding the amount of the loan and/or because Buyer has not sold or leased other real property) in the principal amount of 80% of the purchase price listed above." Each contract further provided:

> In the event the sale is not closed because of Buyer's and/or Seller's failure or refusal to perform any of their obligations herein, the non-performing party shall immediately pay the Broker[ ] the full commission the Broker[ ] would have received had the sale closed, and the [Broker] may . . . pursue the non-performing party for . . . the commission.

The buyer entrusted the broker with $100,000 in earnest money, of which $40,000 was non-refundable if the buyer did not close by the contract deadline.

The buyer submitted to its bank a loan application for the approximate $4 million combined purchase price of the properties, which application the bank denied. Because of the lack of financing, the buyer was unable to close on the sales.

When the broker distributed the entire $100,000 earnest money to the sellers, the buyer sued the broker, claiming that the buyer was entitled to $60,000 of the earnest money. The broker asserted a counterclaim for over $320,000 in commissions, alleging that the buyer as the non-performing party was obligated to pay such. The broker moved for summary judgment on both the buyer's claim for a portion of the earnest money and the broker's counterclaim for real estate commissions. The trial court denied summary judgment on the buyer's claim for the earnest money, finding that genuine issues of fact existed as to whether the buyer had properly objected to the

---

[1] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459, 459 (1) (486 SE2d 684) (1997).

[2] The broker left his original agency and established a new agency, with the sellers agreeing to transfer the listing contracts to his new agency.

broker's disbursal of the funds. However, the court granted the broker summary judgment on its counterclaim for real estate commissions, finding that the buyer's inability to close due to lack of financing obligated the buyer as a matter of law to pay the real estate commissions. The buyer appealed the latter ruling granting summary judgment for the real estate commissions, which is the only ruling before us in this appeal.

The buyer succinctly argues that because the financing contingencies were never met, the real estate contracts were not enforceable, thereby vitiating any claim for real estate commissions. As to the exception to the financing contingency provision (namely, where the financing was denied because the buyer lacked sufficient cash), the buyer contends that the evidence of record does not conclusively establish whether this exception was met. We agree.

OCGA § 10-6-32 provides that a "broker's commissions are earned when, during the agency, he finds a purchaser who is ready, able, and willing to buy and who actually offers to buy on the terms stipulated by the owner." Interpreting this statute, *Barnes v. Whatley*[3] held: "OCGA § 10-6-32 contemplates a mutually binding and enforceable sales contract: Although the actual closing of a sale is not a condition precedent to a broker's right to a commission, *securing a binding contract of sale is a prerequisite to recovery*." (Citation omitted; emphasis supplied.) The burden of showing that (in the absence of a closing) "the parties entered into a binding and enforceable agreement" is on the broker who is seeking a commission. (Punctuation omitted.) Id. See *Carroll v. Harry Norman, Inc.*[4]

A real estate sales contract is not binding and enforceable if its financing contingency is not met. Even though the failure to meet such a contingency is not a condition precedent *to the existence of a valid contract*, "[i]t is reasonable to hold that the obtaining of the loan was a condition precedent to the duty of both parties to render their promised performances. . . ." (Punctuation omitted.) *Brack v. Brownlee*.[5] Thus, "[a]bsent fulfillment of the condition precedent that he obtain financing, [a buyer's] primary obligation under the sales agreement to purchase the [property is] not enforceable against him." *Patel v. Burt Dev. Co.*[6] *Patel* explained further: "The contract was not binding on the parties until [the buyer] obtained a loan, for not until the occurrence of that event did the contract have mutuality. Since [the buyer] did not satisfy the contingency of obtaining a

---

[3] *Barnes v. Whatley*, 221 Ga. App. 110, 112 (2) (470 SE2d 498) (1996).

[4] *Carroll v. Harry Norman, Inc.*, 198 Ga. App. 614, 615 (1) (402 SE2d 357) (1991).

[5] *Brack v. Brownlee*, 246 Ga. 818, 822 (273 SE2d 390) (1981) (on motion for rehearing).

[6] *Patel v. Burt Dev. Co.*, 261 Ga. App. 436, 439 (2) (582 SE2d 495) (2003).

loan by the closing date, the contract never became binding." (Punctuation omitted.) Id. See *Grier v. Brogdon*[7] ("[u]ntil compliance with this condition precedent [of a financing contingency,] the contract is not enforceable") (punctuation omitted); *Panfel v. Boyd*[8] (financing condition is condition precedent that could prevent enforcement of the contract). Compare *Krogh v. Pargar, LLC*[9] ("[s]ince the deadline to pay the commission was before the deadline to satisfy the financing contingency, it is clear that the financing contingency was not a condition precedent to the obligation to pay the commission").

Here, it is undisputed that the buyer was unable to obtain the financing, which prevented the sales from closing. If the exception to the financing contingencies did not apply, then under Georgia law, the buyer's obligation as the "non-performing party" to pay the real estate commissions never arose, for in those circumstances the real estate commissions were never earned in that the sales contracts were neither binding nor enforceable. See *Barnes*, supra, 221 Ga. App. at 112 (2).

Thus, this case boils down to the question of whether the exception to the financing contingencies applied. As set forth above, the pertinent portion of that exception provided that the financing contingency did not act as a condition precedent to the contracts' enforceability "if the loan is denied because Buyer lacks sufficient cash to close excluding the amount of the loan." Despite the critical nature of this question whether the loan was denied because the buyer lacked the referenced cash, there is a dearth of evidence on this issue. The broker did not depose nor otherwise obtain evidence from the bank as to why it denied the loan, nor did the broker seek the buyer's financial records to determine how much money the buyer had on hand for a closing, nor did the broker ask whether additional investors or sources would provide the buyer with the down payment monies. Rather, all the broker did was ask the buyer in a single interrogatory how much money the buyer had available on June 11, 2005 to close on the properties, which date was four days prior to the final execution of the sales contracts and weeks prior to the buyer's applying for a loan. The buyer's response that he had $200,000 on that early date did not definitively answer the questions of whether the buyer would have the needed monies for a later closing (presumably at least $800,000 to cover a 20 percent down payment), or whether the lack of such funds was the reason for the

---

[7] *Grier v. Brogdon*, 234 Ga. App. 79, 80 (1) (505 SE2d 512) (1998).

[8] *Panfel v. Boyd*, 187 Ga. App. 639, 645 (3) (371 SE2d 222) (1988).

[9] *Krogh v. Pargar, LLC*, 277 Ga. App. 35, 37 (1) (625 SE2d 435) (2005).

bank's denial of the loan. Indeed, the buyer's principal testified that in explaining the denial of the loan, the bank told him that the buyer's financial position "was strong" but that a third party's financial position was insufficiently strong; he later muddled the evidence when he testified that the bank never gave him a reason for the loan denial. Because "[i]n a suit for commissions the burden of showing all the requirements is on the broker," *Carroll*, supra, 198 Ga. App. at 615 (1), the broker's choice here not to more diligently pursue discovery or to submit undisputed evidence on this critical issue precluded summary judgment in his favor. See id. at 615-616 (1) (a silent record on the critical question of the financing contingency precluded summary judgment in the broker's favor).

For these reasons, the trial court erred in granting summary judgment to the broker on his counterclaim for real estate commissions.

*Judgment reversed. Barnes, P. J., and Ellington, J., concur.*

DECIDED AUGUST 27, 2010.

*Melvin T. Johnson, K. Rochelle Laroche*, for appellant.
*Carlock, Copeland & Stair, A. Paul Moore, Jr.*, for appellee.