A11A1150. YI v. LI et al.
(721 SE2d 144)

MILLER, Presiding Judge.

Appellant-defendant (the "Seller") entered into a valid contract to sell her ice cream store franchise to Appellees-plaintiffs (the "Purchasers"). Transfer of the franchise was never consummated, however, and the Purchasers brought suit against the Seller for rescission, fraud, and termination of the contract. Following a jury trial, a verdict was returned in favor of the Purchasers on both their rescission and fraud claims.[1] The Seller filed a motion for judgment notwithstanding the verdict, or in the alternative, a new trial. The trial court granted the Purchasers a new trial on their fraud claim only. The Purchasers, however, subsequently dismissed their fraud claim, and the trial court ultimately entered an amended judgment as to the Purchasers' remaining claim for rescission of the contract. The Seller appeals the trial court's denial of her motion for judgment notwithstanding the verdict on the Purchasers' rescission claim, contending that rescission was improper in this case.[2] Finding no evidence of breach by the Seller that would authorize the Purchasers to unilaterally rescind the contract for nonperformance under OCGA § 13-4-62, we must reverse the judgment below and direct that

---

[1] The Purchasers' claim for termination of the contract was not before the jury because the trial court granted the Seller's motion for directed verdict as to that claim.

[2] In an alternative claim of error, the Seller also contends that the trial court erred by entering an amended judgment on the Purchasers' rescission claim and requests this Court to grant a new trial on such claim. Because we conclude that the evidence does not support a claim for rescission, however, we need not address the Seller's alternative argument.

judgment be entered in accordance with the Seller's motion for judgment notwithstanding the verdict on the Purchasers' claim for rescission.

> In reviewing the denial of a . . . motion for a [judgment notwithstanding the verdict] or motion for new trial, this Court must affirm if there is any evidence to support the jury's verdict, and in making this determination, we must construe the evidence in the light most favorable to the prevailing party.

(Citation and punctuation omitted.) *Ferman v. Bailey*, 292 Ga. App. 288, 290 (2) (664 SE2d 285) (2008); *Signsation, Inc. v. Harper*, 218 Ga. App. 141, 142 (2) (460 SE2d 854) (1995) ("[T]he determinative question is not whether the verdict and the judgment of the trial were merely authorized, but is whether a contrary judgment was demanded.") (citations and punctuation omitted).

Examining the record in the light most favorable to the Purchasers, the evidence shows that the Seller was a party to a franchise agreement with Bruster's Ice Cream, Inc. ("Bruster's"), pursuant to which she operated a Bruster's ice cream store in Duluth, Georgia. The Seller met the Purchasers in late 2006, at which time the parties first discussed the Purchasers' interest in acquiring the Bruster's franchise owned and operated by the Seller. In February 2007, the Purchasers submitted to Bruster's an application for the right to operate a franchise store. The Purchasers thereafter attended a Bruster's franchising seminar, as well as multiple meetings with Bruster's vice president of sales. At a meeting on May 26, 2007, the Purchasers signed a franchise agreement (although it was not signed by Bruster's) and paid Bruster's a franchise transfer and training fee.

The parties eventually entered into an amended stock purchase agreement[3] (the "Purchase Agreement" or "Agreement") that required the Purchasers to pay $300,000[4] for all of the Seller's "issued and outstanding shares of [Eastern Source Investment Inc.[5]]," for the purpose of operating the Seller's Bruster's ice cream store. The

---

[3] This agreement amended the parties' original May 25, 2007, agreement only with respect to the purchase price and the manner of payment.

[4] The payment terms of the Purchase Agreement provided for $230,000 to be paid by the Purchasers at the time of execution, and the remaining $70,000 to be financed by the Seller and repaid by the Purchasers in 24 monthly installment payments.

[5] The parties testified that Eastern Source Investment Inc. was a company doing business as Bruster's, and that the Seller had to sell the Purchasers her shares of this company in order to transfer her Bruster's franchise.

Purchase Agreement set forth in relevant part:

> The closing of the transactions contemplated hereby (the *"Closing"*) shall take place . . . on the earlier of July 31, 2007 (the *"Closing Date"*), provided that the closing is conditioned upon the obtaining of (i) Landlord's Consent, (ii) Franchisor's Consent.
>
> . . .
>
> **Consents.** The execution, delivery and performance by the Seller of the Seller Agreements,[6] and the consummation of the transactions contemplated herein do not require the consent, approval or action of, or any filing with or notice to, any government or other person, except (1) the consent and approval of Bruster's, a Pennsylvania limited partnership, regarding the Franchise Agreement (*"Franchisor's Consent"*); and (2) the consent and approval of [the landlord], regarding the [l]ease . . . [of] . . . the [p]remises . . . .
>
> . . .
>
> **Termination for Certain Reasons.** Notwithstanding anything in this Agreement to the contrary, this Agreement may be terminated prior to the Closing Date as follows: (a) by either party, if the Franchisor's Consent cannot be obtained . . . .

The Purchaser knew that as of June 13, 2007, Bruster's had not yet consented to the transfer or otherwise approved them as franchisees; nevertheless, they proceeded to execute the Agreement and pay the Seller $230,000.[7]

The very next day, June 14, 2007, the Purchasers took possession of the ice cream store and operated it continuously until December 1, 2007.[8] Despite the fact that the Purchasers were essentially acting in the role of franchisees during this time, Bruster's never consented to the parties' proposed transfer of the Seller's franchise. On August 7, 2007, Bruster's memorialized in writing that

---

[6] The Purchase Agreement defined "Seller Agreements" as the Agreement itself "and all of the other documents and agreements contemplated herein to which the Seller is a party . . . ."

[7] Although the Purchase Agreement contemplated that closing of the transaction would take place on July 31, 2007, the Seller's position is that on the same day the parties executed the Agreement, they also closed their transaction. The Purchasers, however, although conceding that no closing took place on July 31, 2007, argue that closing could not have occurred because Bruster's never provided its consent to the transfer.

[8] The Purchasers ceased operations as of December 1, 2007, pursuant to Bruster's policy permitting closure of its ice cream stores during the winter months.

it was withholding its consent of the transfer.[9] In a letter dated September 13, 2007, the Purchasers formally notified the Seller that they were rescinding the Purchase Agreement and demanded that the Seller not only return all monies paid with respect to the Purchase Agreement, but also take back possession of the ice cream store. The Seller, however, refused to do either.

The Purchasers subsequently brought suit against the Seller for rescission, fraud, and termination of the contract. The parties' claims were tried before a jury, which returned a verdict in favor of the Purchasers for both their fraud and rescission claims and awarded the Purchasers general damages ($265,172.37), attorney fees and costs ($86,057.06), and punitive damages ($200,000). The trial court entered a judgment upon the jury's verdict. Thereafter, the Seller filed a motion for judgment notwithstanding the verdict, or in the alternative, for a new trial. Finding that there was insufficient evidence to support the Purchasers' fraud claim, the trial court entered an order purporting to grant the Seller's motion for new trial as to the fraud claim.[10] The trial court subsequently clarified its order to explain that it intended to leave the rescission verdict and judgment undisturbed and to also expressly deny the Seller's motion for new trial on the rescission claim. In light of the ruling, the Purchasers dismissed their fraud claim. To reflect its grant of a new trial, and the Purchasers' subsequent dismissal of the fraud claim, the trial court entered an amended judgment contemplating only the Purchasers' claim for rescission.[11]

On appeal, the Seller asserts that the trial court erred by denying her motion for judgment notwithstanding the verdict on the Purchasers' rescission claim because such claim was improper in this case.[12]

"A party may rescind a contract without the consent of the

---

[9] Financial concerns regarding the volume of the store versus the proposed purchase price were ultimately the basis upon which Bruster's decided to deny the transfer.

[10] Although not an issue on this appeal, we nevertheless note that a trial court cannot state that the evidence presented by the Purchasers on the matter of fraud was insufficient and then purport to grant the Seller's motion for new trial on the matter. See *Diegert v. Cedarbrook Homes*, 267 Ga. App. 264, 265 (599 SE2d 211) (2004). "If the evidence is insufficient, the trial court must rule in favor of the [Seller] on this claim, not allow it to be re-litigated." Id.

[11] In omitting the Purchasers' fraud claim, the amended judgment also excluded the punitive damages that were awarded by the jury as such were claimed only in connection with the Purchasers' dismissed fraud claim.

[12] As an initial matter, we note that this Court is constrained by what the law says we can review, which in this case, is the question of whether there was any evidence to support the Purchasers' claim for rescission of the contract. See *Forrest Cambridge Apartments v. Redi-Floors, Inc.*, 295 Ga. App. 840, 842 (3) (673 SE2d 318) (2009) ("We are limited on appeal to those grounds presented to and ruled upon by the trial court and then enumerated as error.") (citations and punctuation omitted).

opposite party on the ground of nonperformance by that party but only when both parties can be restored to the condition in which they were before the contract was made." OCGA § 13-4-62. "[T]o justify rescission, there must be a 'material nonperformance or breach' by the opposing party." *Forsyth County v. Waterscape Svcs.*, 303 Ga. App. 623, 633 (2) (b) (694 SE2d 102) (2010). Further, "[t]he remedy of rescission for nonperformance is appropriate when the breach is so substantial and fundamental as to defeat the object of the contract." (Emphasis supplied.) *Lanier Home Center v. Underwood*, 252 Ga. App. 745, 746 (1) (557 SE2d 76) (2001).

In setting forth a rescission claim for nonperformance in this case, the Purchasers premised their claim upon the failure of a contingency that acted as a condition precedent in the Purchase Agreement. See OCGA § 13-3-4 ("A condition precedent must be performed before the contract becomes absolute and obligatory upon the other party."). Notably, the Purchase Agreement expressly provided that the Seller's obligations to execute, deliver, and perform under the Agreement were conditioned upon the consent and approval of Bruster's, as the franchisor.

"Even though the failure to meet such a contingency is not a condition precedent *to the existence of a valid contract*, it is reasonable to hold that the obtaining of [Bruster's consent] was a condition precedent to the duty of both parties to render their promised performances." (Citation and punctuation omitted.) *Desmear Systems v. Vines*, 305 Ga. App. 730, 732 (700 SE2d 711) (2010). Thus, the failure to satisfy the condition precedent here excused the parties' obligations and performance under the Purchase Agreement. Significantly, the Purchase Agreement did not place the duty of satisfying the condition, i.e., obtaining Bruster's consent, upon the Seller. Rather, the evidence showed that the Purchasers were the ones who pursued and coordinated their efforts to obtain the required consent directly with Bruster's. Consequently, it cannot be said that the failure to satisfy the condition constituted a breach by the Seller. Moreover, in the absence of any evidence that the Seller engaged in conduct that prevented the satisfaction of the condition, there was no evidence that the Seller did anything wrong or otherwise caused a breach of the Purchase Agreement provisions.

Thus, the trial evidence did not support the remedy of rescission for nonperformance under OCGA § 13-4-62.[13] Therefore, the jury's rescission verdict was not supported by the evidence and it was error to deny the Seller's motion for judgment notwithstanding the verdict

---

[13] Given our conclusion, we need not address the Seller's additional arguments as to why rescission was improper.

278

as to the Purchasers' rescission claim. Accordingly, we reverse the judgment below and direct that a judgment be entered in accordance with the Seller's motion for judgment notwithstanding the verdict.

*Judgment reversed with direction. Ellington and Doyle, JJ., concur.*

DECIDED NOVEMBER 21, 2011 —
RECONSIDERATION DENIED DECEMBER 13, 2011 —

*Pierce & Dunkelberger, J. Wayne Pierce*, for appellant.
*Taylor, English & Duma, Richard A. Kaye, E. Peyton Nunez, Craig K. Pendergrast*, for appellees.